HORACE S. COCO vs. SCHOOL COMMITTEE OF BOYLSTON.

Worcester. February 8, 1984. — June 19, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*School and School Committee,* Salaries of tenured personnel, Termination of employment.

A school committee's transfer of a tenured teacher to part-time status, with a corresponding decrease in salary, violated the provisions of G. L. c. 71, § 43. [224-226]
The terms of a collective bargaining agreement to which a tenured teacher was subject did not provide consent for the teacher's transfer to part-time status with a corresponding decrease in salary, nor did the presence of a few part-time teachers in the school system establish a past practice which could supply the teacher's consent by implication. [225]
A school committee's decision to transfer a tenured teacher to part-time status did not violate G. L. c. 71, § 42, even though at the time the superintendent of schools informed the teacher that a recommendation to decrease his teaching time would be made there were two nontenured teachers holding teaching positions in subject areas in which the plaintiff was certified, where on the date on which the school committee voted to transfer the teacher to part-time status all the teachers holding positions which he might fill were tenured. [226-227]

CIVIL ACTION commenced in the Superior Court Department on September 16, 1981.

The case was heard by *Mulkern,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Edward J. McDonough, Jr.,* for the plaintiff.

*James A. Toomey* for the defendant.

*Austin Broadhurst,* for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

LYNCH, J. The plaintiff is a tenured physical education teacher in the Boylston school system. On March 5, 1981, the

superintendent of schools for the Boylston school district (the superintendent) informed the plaintiff that, due to a decrease in the number of students in the school system and the financial constraints created by Proposition 2½ (St. 1980, c. 580), it would be necessary for him to recommend a reduction in the plaintiff's teaching time from five to three days a week. At the time, there were two nontenured teachers holding positions in subject areas in which the plaintiff was certified. In response to the superintendent's proposed recommendation, the plaintiff requested that he instead be appointed to one of these two teaching positions. This request was denied. Subsequent to this denial, on May 20, 1981, the two aforementioned teachers were granted tenure by the defendant school committee (committee). Finally, on August 24, 1981, after a hearing regarding the superintendent's recommendation, the committee voted to decrease the plaintiff's teaching time from five to four days a week and to reduce his salary to four-fifths of that of a full-time teacher. At the time of this vote, there were no longer any untenured teachers occupying positions for which the plaintiff was certified.

The plaintiff sought review of the committee's decision in the Superior Court under G. L. c. 71, § 43A.[1] The judge found in favor of the plaintiff, on the authority of our opinion in *Setterlund* v. *Groton-Dunstable Regional School Comm.*, 382 Mass. 328, 331 (1981), in which we held that a tenured teacher

[1] General Laws c. 71, § 43A, as amended through St. 1977, § 671, provides in pertinent part: "Any teacher or principal or superintendent . . . employed . . . under a contract, for the duration of his contract, or any principal or supervisor, who had been dismissed, demoted, or removed from a position by vote of a school committee under the provisions of section forty-two, section forty-two A or section sixty-three may, within thirty days after such vote appeal therefrom to the superior court in the county in which the person was or is employed.

"The court shall advance the appeal for a speedy hearing and, after such notice to the parties as it deems reasonable, it shall hear the cause de novo, review such action, and determine whether or not upon all the evidence such action was justifiable. If the court finds such action was justifiable, the action of the school committee shall be affirmed; otherwise, it shall be reversed and the appellant shall be reinstated to the position without loss of compensation. The decision of the court shall be final, except as to matters of law."

who is reduced to part-time employment without his consent has been "dismissed" (within the meaning of G. L. c. 71, § 43A).

On cross motions for summary judgment, the judge made two basic rulings. First, he found that the reduction in the plaintiff's pay to reflect the decrease in his hours effected a "reduction" of "salary" under G. L. c. 71, § 43, in violation of that section's provision which permits such reductions only when they are part of a "general salary revision affecting equally all teachers of the same salary grade in the town." *Id.* In the case before us, there were other teachers occupying the same salary grade as the plaintiff whose pay was not reduced. Further, the judge rejected the committee's argument that the plaintiff had consented to the salary decrease by way of the existing collective bargaining agreement between the committee and the plaintiff's union, as had been the case in *Setterlund, supra.* The judge found that the agreement was silent on the issue of appropriate compensation of part-time teachers, and determined that this silence could not be interpreted as a tacit consent to pro rata reductions in pay based on the number of days worked a week.

The judge also ruled that the plaintiff's "dismissal" (i.e., reduction from full-time to part-time status) as a tenured physical education teacher occurred at a time when there were no nontenured teachers holding positions in subject areas that the plaintiff was certified to teach.[2] The basis for this ruling was the judge's conclusion that the plaintiff was not "dismissed" at the time of the superintendent's proposed recommendation or indeed at any time prior to the actual vote taken by the committee on the recommendation on August 24, 1981. By the time of the vote, as noted above, the two remaining untenured teachers in the school system in his field had been elevated to tenured status.

---

[2] General Laws c. 71, § 42, states in pertinent part: "In case a decrease in the number of pupils in the schools of a town renders advisable the dismissal of one or more teachers, a teacher who is serving at the discretion of a school committee under section forty-one [as was the plaintiff] shall not be dismissed if there is a teacher not serving at discretion whose position the teacher serving at discretion is qualified to fill."

We affirm both rulings of the judge. In doing so, we first answer a question that we expressly left open in *Setterlund, supra* at 330, namely whether the terms "reduction" in "salary" utilized in G. L. c. 71, § 43, refer solely to a reduction in the rate of pay or to a reduction in the amount of pay as well. There is considerable authority from other jurisdictions, and some guidance from Massachusetts precedent, for interpreting the term "salary" to refer to a fixed annual or periodic amount of pay depending upon the period of employment, rather than upon the number of days or hours worked within that period. *State ex rel. Hirst* v. *Black,* 46 Del. 295, 298 (1951), quoting *State ex rel. Murray* v. *Riley,* 45 Del. 192, 196 (1949) (which defined "salary" as "regular compensation at fixed periods without regard to the number of days actually worked"). *Commonwealth Life & Accident Ins. Co.* v. *Board of Review of the Dep't of Labor,* 414 Ill. 475, 485 (1953). *United States* v. *Grant,* 237 F.2d 511, 514 (7th Cir. 1956). *Smith* v. *Mobile,* 230 Ala. 584 (1935). *Atlanta* v. *Akins,* 116 Ga. App. 230 (1967). See also *Libby* v. *Douglas,* 175 Mass. 128, 130 (1900). Certainly there is no indication in G. L. c. 71, § 43, either on its face or in its legislative history, that as long as the hourly rate of pay remains the same a teacher's income can be significantly reduced by reducing the number of compensable hours. Absent contrary legislative intent, words in a statute should be accorded their plain and ordinary meaning. The terms "reduction" in "salary," as used in G. L. c. 71, § 43, thus refer to any reduction in the amount of compensation payable to an individual over a fixed period, whether such reduction is accomplished by a decrease in the rate of pay or in the amount of gross income.

This interpretation is consistent with *Setterlund,* in that it avoids a result that would obliterate the protections of G. L. c. 71, § 43, and that would permit a school committee to reduce compensable hours until economic necessity forced a tenured teacher to resign. Therefore, the committee's decision to transfer the plaintiff to part-time status did effect a reduction in his salary. As we observed in *Setterlund, supra* at 330 n.3, "a tenured teacher may have his salary reduced in only two

situations: (1) if . . . he is subject to a collective bargaining agreement, it may be reduced in accordance with the agreement; (2) if he is not subject to a collective bargaining agreement, he must individually consent to a reduction." After careful study, we conclude that neither situation pertains to the plaintiff.

The agreement to which the plaintiff is a party has no language regarding the treatment of part-time teachers. Absent express provisions such as existed in *Setterlund, id.* at 330 n.2 ("[p]art-time teachers will be paid on a pro-rated basis, having been placed on the appropriate step of the Salary Schedule in the same manner as full-time teachers"), we conclude that the necessary consent cannot be found within the collective bargaining agreement.

The committee argues in the alternative that the plaintiff impliedly consented to the payment of pro rated salaries to part-time teachers. In this respect, the committee points to the fact that there were a few part-time teachers in the school system at the time of the plaintiff's demotion. Even if these isolated instances of partial pay for part-time work would be found to fall within the defendant's characterization of them as a "consistent past practice," the committee's argument must fail.

The plaintiff's experience was quite unlike the "practice" regarding other part-time teachers in the system. Those teachers were expressly hired for part-time work at reduced wages, so there was no issue of their consent to this compensation arrangement. Unlike the plaintiff's, these teachers' salaries were never reduced nor were their hours shortened. Even if we assume that past practices could supply by implication the consent of the plaintiff, no finding of implied consent would be warranted on employment histories as dissimilar as those relied upon here.

The defendant argues, in addition, that even if no consent was given to the reduction in salary, still the provisions of G. L. c. 71, § 43, were not violated since the plaintiff was not treated differently after his demotion from other teachers of the "same salary grade," namely those on part-time status. In this regard, the defendant relies primarily on *Downey* v.

*School Comm. of Lowell,* 305 Mass. 329 (1940), which involved a principal of a school that was subsequently closed, who was then reassigned to the position of teacher in another school. It was held that after her school was closed, the individual was no longer entitled to be in the "same salary grade" as other principals in the school system, and therefore the reduction of her salary to that of a teacher did not violate G. L. c. 71, § 43.

As an initial matter, *Downey* is distinguishable from the instant case. Unlike Downey's, the plaintiff's position as physical education teacher was not abolished; only his hours were curtailed. The plaintiff will still be performing the same kinds of duties in his "new" position and should thus remain in the same salary grade; Downey could not act as principal of a nonexistent school and therefore her reassignment did effect a true change of position.

Thus, the defendant is in effect asking us to elevate procedure over substance in its argument that the plaintiff was "first" demoted to part-time status and then his salary was reduced so as to be equivalent to that of persons in the "same salary grade." As the Appeals Court recently held under very similar circumstances in *Lehmann* v. *Upper Cape Cod Regional Vocational Technical School Dist. Comm.,* 17 Mass. App. Ct. 283, 284 (1983), the "ultimate result and purpose" of the defendant's actions were quite simply to reduce the plaintiff's salary as an economy measure. While such a motive may have been well intentioned, G. L. c. 71, § 43, and our decision in *Setterlund* circumscribe the means that can be used to achieve this end. Resort to the artificial device of first demoting a teacher and then adjusting his salary is not an acceptable alternative. We therefore hold that the reduction in the plaintiff's salary was in violation of G. L. c. 71, § 43, and affirm the award of compensation granted by the judge of the Superior Court.

We also agree with the trial judge's denial of the plaintiff's claim under G. L. c. 71, § 42, that he was dismissed at a time when there were two nontenured teachers serving in the school system whose positions he was qualified to fill. We need not

reach the issue whether the term "qualified" in the statute is meant to refer to the certification needed to teach a particular course or something more, since it is clear that on the date of the school committee's vote to reduce the plaintiff to part-time status — August 24, 1981 — there were no longer any untenured teachers in his field in the school system.

The plaintiff's focus on the date he was informed by the superintendent that a recommendation would be made regarding the demotion is misguided. The school committee was in no way compelled to accept the superintendent's recommendation; indeed, it rejected certain of his other recommendations regarding faculty changes. "Any recommendation that [a superintendent] might make, even where the submission of a recommendation is required as in proceedings to remove a teacher, would be merely advisory. The giving of the recommendation would not impose any obligation upon the committee to adopt it." *Crudden* v. *Superintendent of Schools of Boston,* 319 Mass. 686, 688 (1946). *Russell* v. *Gannon,* 281 Mass. 398, 401 (1933). In the case before us the critical date was, instead, when the school committee voted to approve the superintendent's recommendation to reduce the plaintiff's teaching time. Cf. *Illig* v. *Plymouth,* 337 Mass. 239, 242 (1958). At that time, there were no full-time positions available which the plaintiff was qualified to fill.

*Judgment affirmed.*