EILEEN ASSAD *vs.* BERLIN-BOYLSTON REGIONAL SCHOOL
COMMITTEE.

Worcester. January 8, 1990. - February 14, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee*, Tenure of personnel, Termination of employment. *Practice, Civil*, Dismissed school teacher's appeal. *Damages*, Mitigation of damages.

Statement of the standard of review in the Superior Court under G. L. c. 71, § 43A, afforded tenured teachers who are dismissed from their positions. [652]

A Superior Court judge correctly construed G. L. c. 71, § 42, as precluding a school committee from dismissing a tenured teacher if she was qualified for another position, whether tenured or not, which existed on the date the school committee voted on her discharge. [652-655]

The record presented at the trial of a complaint brought under G. L. c.71, § 43A, for review of a tenured teacher's dismissal amply supported the judge's conclusion that the teacher was qualified to fill an existing non-tenured position at the time the school committee voted to discharge her. [655-656]

The defendant in a civil action did not sustain its burden of proving that the plaintiff, a discharged employee, failed to use reasonable efforts to secure similar work. [656-657]

CIVIL ACTION commenced in the Superior Court Department on April 10, 1987.

The case was heard by *William H. Welch*, J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*James A. Toomey* for the defendant.

*Jeffrey W. Jacobsen* for the plaintiff.

*Austin Broadhurst*, for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

LYNCH, J. In March, 1988, a Superior Court judge decided, after de novo review pursuant to the plaintiff's timely complaint under G. L. c. 71, § 43A (1988 ed.), that the defendant school committee violated the statutory rights of the plaintiff, a teacher serving at its discretion (a tenured teacher), when it dismissed her on March 11, 1987, due to financial constraints. Specifically, the judge held that, as a matter of law, the school committee had failed to justify its action, inasmuch as Assad was qualified to fill the position held by a nontenured teacher retained at the school where she taught, Berlin-Boylston Regional High School (commonly known as Tahanto Regional High School), at the time the school committee took the dismissal vote. See G. L. c. 71, § 42 (1988 ed.). The defendant appealed, and the Appeals Court affirmed under Rule 1:28 of the Rules of the Appeals Court, as appearing in 10 Mass. App. Ct. 942 (1980). *Assad v. Berlin-Boylston Regional School Comm.*, 27 Mass. App. Ct. 1404 (1989). We granted further appellate review. We affirm the judgment below.

The following facts were either found by the judge or agreed to by the parties. From 1979 through June 1987, Assad taught primarily as a special education teacher and coordinated the school's team teaching program, in which special education and regular students were instructed together in the same classroom. She has a bachelor's degree in education and a master's degree in teaching those with learning disabilities; she is certified by the Department of Education in elementary teaching (grades K through 8), and teaching perceptually handicapped children and children with moderate special needs. In addition, she had been for several years a member of the school's discipline review committee, and in that position took part in developing the policies and code governing student discipline in effect in the 1986-1987 school year.

Because of falling enrollment, the school committee voted "with regret" on March 11, 1987, to dismiss her effective at

the end of that school year.[1] At the time of the vote, a non-tenured teacher was in his first year at Tahanto. He was responsible for teaching a courseload that included three classes of eighth grade English and one ninth grade English class. For two periods a day he was also acting as an administrative assistant for discipline of seventh through ninth graders. His actual teaching schedule for the year following the plaintiff's dismissal was one class in psychology to eleventh and twelfth graders, two classes in eighth grade English and three periods of administrative duty.

Had Assad continued to teach at Tahanto in 1987-1988, she would have earned $30,032. She interviewed for a number of jobs and turned down an offer to teach special education students in a resource room apart from the general student population in the Worcester public schools that would have paid about $30,000. In September, 1987, Assad took a job as head of the language department at the Carroll School, a private school for dyslexic students in Sudbury. In 1987-1988, she earned $25,200.

The judge found Assad was qualified for the job held by the nontenured teacher at the time the school committee voted to dismiss her, and thus concluded that the school committee had violated G. L. c. 71, § 42. The Appeals Court agreed and affirmed the order for reinstatement and compensation of Assad.

In this appeal the school committee asserts that the judge erred by using the date of the school committee's vote to terminate Assad as the point in time at which Assad's qualifications for the other job were to be measured under c. 71, § 42. Second, even if the date of the vote was the proper focus, the defendant contends that the judge's factual finding and ultimate conclusion that Assad was qualified for the other job were not warranted by the record before him. Finally, in the event those arguments are unavailing, the defendant challenges the amount of back pay it has been ordered to pay the

[1]The plaintiff has not argued that the school committee's motive for dismissing her was an improper one.

plaintiff, on the ground that her rejection of the Worcester position constituted a failure to mitigate damages.

1. *The G. L. c. 71, §43A, process and standard of review.* Chapter 71, § 43A (1988 ed), gives tenured teachers the right to appeal their dismissals to the Superior Court for a trial de novo. In that "appeal," the court accords no deference to the school committee's findings and judgments. *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 306 (1981). Instead, the court compiles a record of its own and judges on the independent basis of its fact-finding whether the school committee's action was justifiable. The burden of proof is on the school committee to show the plaintiff was validly dismissed under § 42. *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 615-616 (1961). *Kurlander* v. *School Comm. of Williamstown*, 16 Mass. App. Ct. 350, 355-356 (1983). If the judge reasonably concludes that the school committee has failed to meet this burden, § 43A "requires" the tenured teacher's continued employment. *MacKenzie* v. *School Comm. of Ipswich, supra.*

Furthermore, c. 71, § 43A, provides that "[t]he decision of the court shall be final, except as to matters of law." Thus, we confine our review to determinations of law applied by the judge. His findings must not be reversed unless "clearly erroneous." *Sherman* v. *School Comm. of Whitman*, 26 Mass. App. Ct. 903 (1988). *Springgate* v. *School Comm. of Mattapoisett, supra* at 307. With this standard in mind we consider each of the school committee's arguments regarding Assad's qualifications and conclude that they fail.

2. *The timing of G. L. c. 71, § 42's qualification requirement.* Chapter 71, § 42, governing the discharge of teachers, provides the following protection for teachers "serving at discretion," meaning those with tenure.

> "In case a decrease in the number of pupils in the school of a town renders advisable the dismissal of one or more teachers, a teacher who is serving at the discretion of a school committee under section forty-one shall not be dismissed if there is a teacher not serving at dis-

cretion whose position the teacher serving at discretion is qualified to fill."[2]

See *Rantz* v. *School Comm. of Peabody*, 396 Mass. 383, 385 (1985). The defendant school committee argues that it could dismiss Assad if she was not qualified for any position its nontenured teachers would be holding in the coming school year, and that the positions held by nontenured teachers at the time of the dismissal vote are in fact irrelevant. We disagree.

Such an interpretation conflicts with the plain language of the statute, the statutory scheme, and the reasoning of *Coco* v. *School Comm. of Boylston*, 392 Mass. 221 (1984). The Legislature has clearly indicated that the comparison between the tenured and nontenured teachers' qualifications is to be made at the time of dismissal. The tenured teacher "shall not be dismissed if there *is*" a nontenured teacher's position that the tenured teacher "*is* qualified to fill" (emphasis added).

Moreover, in *Coco* v. *School Comm. of Boylston, supra,* we upheld the demotion of a tenured teacher who argued that he was qualified to fill the full-time positions of two nontenured teachers at the time he was first informed that he would be reduced from full-time to part-time status by the superintendent. *Id.* at 222. However, by the time the vote to demote him took place, there were no nontenured teachers whose position the plaintiff was qualified to fill. *Id.* at 227.

"[T]he critical date" for assessing a tenured teacher's qualifications for a nontenured teacher's position, when the former is being considered for termination under § 42, is at dismissal — that is, "when the school committee voted." *Id.* See *Rantz* v. *School Comm. of Peabody, supra* at 386. Because until that vote no school superintendent's or administrator's recommendation for dismissal is final, we concluded

[2]This provision, although phrased solely in terms of declining enrollment, has been interpreted to apply to situations of financial constraints as well. *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197 (1982).

the school committee vote is the only moment in time for triggering application of § 42.

The rationale of *Coco, supra,* is fully applicable in the case before us. Here, the nontenured teacher's position for which Assad's qualifications were being assessed consisted of a certain configuration of courses on March 11, 1987. The school committee's argument is that on that date school officials already had tentatively planned to assign the nontenured teacher a different, second array of courses for 1987-1988 against which the court should compare Assad's qualifications. In fact, he ultimately ended up teaching yet a third variation of courses in that year. The timing of § 42's requirements cannot hinge on such a fluid foundation as projections of future teacher schedules, any more than it can on recommendations for dismissal. .

Furthermore, evidence of § 42's clear meaning can be supported by § 43A. In relevant part, that section provides any tenured teacher "dismissed, demoted, or removed from a position by vote of a school committee under the provisions of section forty-two" the right to bring an appeal "within thirty days after such vote." The purpose of the thirty-day appeal period is "clearly" stated in the statute's following sentence: to provide for "a speedy hearing." *Clark* v. *Mt. Greylock Regional School Dist.,* 3 Mass. App. Ct. 549, 552 (1975). See *Haskell* v. *School Comm of Framingham,* 17 Mass. App. Ct. 628, 632 (1984) (stating that § 43A gives tenured teachers an "expeditious" appeal process). Accordingly, the Appeals Court has strictly construed this time requirement, repeatedly holding as time-barred complaints filed by terminated tenured teachers more than thirty days after the vote of the school committee. See *Kaufman* v. *School Comm. of Boston,* 18 Mass. App. Ct. 909, 911 (1984) (filing of grievance under collective-bargaining agreement within the thirty-day period does not toll the time limit for § 43A review); *Muldoon* v. *Whittier Regional School Comm.,* 7 Mass. App. Ct. 653, 659 (1979) (action time-barred under § 43A, even though none of the procedural protections mandated by § 42 had been met); *Clark* v. *Mt. Greylock Regional School*

*Dist.*, *supra* at 553 (in situation where multiple votes by school committee occurred, and plaintiff filed action under § 43A within 30 days of last vote, he was found time-barred because the first vote was the decisive demotion).

Accordingly, we hold that the judge correctly construed § 42 as precluding the defendant school committee from dismissing Assad if she was qualified for another position which existed on the date they voted on her discharge.

2. *Findings of qualification.* The school committee also challenges the judge's conclusion that it failed to meet its burden of proving that it was justified in dismissing Assad, and that she was qualified for another job at the time she was discharged. The judge's findings in this regard were amply supported by the record. *Breslin* v. *School Comm. of Quincy*, 20 Mass. App. Ct. 74, 76 (1985).

The school committee contends that the plaintiff was unqualified to act as an administrative assistant for discipline, or to teach one period of ninth grade English, as did the nontenured teacher. The problem with the first part of this argument is that the statute governing certification for various, enumerated positions in the public schools does not list administrative assistants. See G. L. c. 71, § 38G (1988 ed.). Neither do the regulations promulgated by the Department of Education under § 38G require certification for administrative assistants. See 106 Code Mass. Regs § 7.02 (4) (1986).

The judge was not required to accept the testimony of the director of the Department of Education's bureau of teacher preparation, certifications and placement that administrative assistants were required to be certified in secondary administration. Both the superintendent and a teacher who had previously held the position of administrative assistant for discipline testified that previous teachers who had filled the job had not been so certified. The judge also had evidence before him that, apart from certification, the plaintiff was qualified on the basis of experience to be an administrative assistant for discipline.

There was no dispute, however, that Assad was not certified to teach ninth grade English. Her teaching certification covered the kindergarten through eighth grade levels. However, this one class out of six periods constituted 16.6 percent of the nontenured teacher's course schedule. Under the "20% rule" of the regulations of the Department of Education, a certified teacher may work up to twenty percent of his or her time in a role or level for which he or she is not certified. 106 Code Mass. Regs. § 7.02 (4). Thus, the judge concluded, Assad would have been legally permitted under this rule to teach the ninth grade English course.[3]

As a result, the judge ruled that the tenured teacher Assad was qualified to fill the position of the nontenured teacher at the time the school committee took its vote to dismiss Assad. We conclude there was no error.

3. *Mitigation of damages.* The school committee has challenged the Superior Court judge's order that it reimburse Assad for back pay on the ground that Assad failed to mitigate her damages by refusing to accept a higher paying job that was offered to her with the Worcester public schools. Although she was required to mitigate her damages, *Ryan v. Superintendent of Schools of Quincy*, 374 Mass. 670, 672 (1978), the burden of proof on the issue of mitigation is on the employer. *Id.* at 673. *McKenna v. Commissioner of Mental Health*, 347 Mass. 674, 677 (1964). The obligation of discharged employees in Massachusetts is to use "reasonable efforts to secure other similar work." *McKenna v. Commissioner of Mental Health, supra* at 676. *Sherman v. School Comm. of Whitman*, 26 Mass. App. Ct. 903, 905 (1988). Such employees "cannot voluntarily remain idle and expect to recover the compensation stipulated in the contract from the other party." *McKenna v. Commissioner of Mental Health, supra.* Therefore, the school committee's burden was to prove that "(a) one or more discoverable opportunities for

[3]In addition, the judge had found Assad had considerable experience teaching high-school-level students through the team teaching program, and in fact, was teaching with a colleague a tenth grade English class at the time she was dismissed.

comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made *no attempt* to apply for *any* such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs" (emphasis added). *Ryan* v. *Superintendent of Schools of Quincy*, *supra* at 673, quoting *Black* v. *School Comm. of Malden*, 369 Mass. 657, 661-662 (1976).

There was uncontroverted evidence that Assad launched a job search soon after the school committee voted to dismiss her, and obtained a job for the next school year. As between the Worcester and Carroll School jobs, the judge found that it was reasonable for Assad to use her professional judgment to assess the quality of the programs in which she was being offered employment and to consider that factor, as well as personal career enhancement goals, to choose the Carroll School job despite its salary of $25,200. On such evidence the judge was not required to find that Assad's rejection of the Worcester job was unreasonable.

*Judgment affirmed.*