DONALD R. HALLETT *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

Suffolk. December 7, 1999. - March 16, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Contributory Retirement Appeal Board. Teachers' Retirement Board. School
and School Committee,* Retirement benefits. *Statute,* Construction. *Words,*
"Regular compensation," "Salary."

The plain language of G. L. c. 32, § 1, provides that, for teachers, only "sal-
ary" for "additional services" is part of regular compensation; as a
consequence, hourly wages paid to a teacher for teaching driver education
before and after school hours were not includable as part of regular
compensation for purposes of the calculation of retirement benefits. [68-70]

CIVIL ACTION commenced in the Superior Court Department on
October 14, 1997.

The case was heard by *David M. Roseman,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Matthew D. Jones* for the plaintiff.

*Pierce O. Cray,* Assistant Attorney General, for the defen-
dants.

LYNCH, J. This case presents the question whether a teacher
who was paid a fixed salary for both his regular teaching duties
and his additional services as director of driver education is
entitled to have the hourly wages he also earned teaching driver
education before and after normal school hours count toward
calculating his retirement allowance pursuant to G. L. c. 32,
§ 5.[2] A Superior Court judge affirmed the decision of the
Contributory Retirement Appeal Board (CRAB), ruling that the
plaintiff's hourly pay is not included as part of "[r]egular

---

[1]Teachers' Retirement Board.

[2]Under G. L. c. 32, § 5 (2) (*a*), an employee's retirement allowance is
based on the average annual "regular compensation" for the three years of
creditable service preceding retirement.

compensation" pursuant to G. L. c. 32, § 1. We transferred the case here on our own motion, and now affirm the judge's decision but on different grounds.

1. *Facts and procedural history.* The facts are undisputed. The plaintiff taught in the Swampscott public schools for thirty-five years. In addition to his regular teaching duties, he was appointed as the director of the driver education program in 1982, and served in that capacity until his retirement. During that time he also taught driver education with both a classroom component that took place before school hours and road instruction that took place after school hours.[3] According to the collective bargaining agreement, the plaintiff was paid a specific sum for his service as the director of driver education, but was paid an hourly rate for the classroom and road instruction.

The pertinent statute, G. L. c. 32, § 1, states, in relevant part:

" 'Regular compensation' . . . shall mean the full *salary, wages* or *other compensation* in whatever form . . . . In the case of a teacher employed in a public day school who is a member of the teachers' retirement system, *salary* payable under the terms of an annual contract[4] for *additional services* in such a school *and also compensation* for services rendered by said teacher in connection with a school lunch program or for services in connection with a program of instruction of physical education and athletic contests . . . shall be regarded as regular compensation rather than as bonus or overtime and shall be included in the salary on which deductions are to be paid [to the retirement fund] . . . ." (emphases added).

When the plaintiff retired, the teachers' retirement board (board) counted the fixed stipend the plaintiff earned as the director of driver education as regular compensation for purposes of calculating his retirement but ruled that "*hourly payments* made for classroom and on the road instruction . . .

---

[3]The plaintiff also taught driver education during the summer months, but does not contend that the money earned for that service is included in his calculation for retirement. Payments for certain summer school employment are explicitly excluded by regulation. See 807 Code Mass. Regs. § 6.02(2)(b) (1994).

[4]"[A]nnual contract" means collective bargaining agreement. See 807 Code Mass. Regs. § 6.01 (1994).

performed before school, after school, on weekends, during the summer vacation as well as other vacations" were not counted as regular compensation (emphasis added). CRAB and the judge each affirmed the board's decision.

2. *Discussion.* In affirming CRAB's decision, the judge relied, as did CRAB, on Roberts *vs.* Contributory Retirement Appeal Board, Plymouth Superior Court, No. 93-1217 (Jan. 12, 1995), which turned on the meaning of the words "in a public day school" in G. L. c. 32, § 1. Here we conclude that the plain language of the statute provides a more straightforward solution to this case and does not require us to decide either the meaning of the phrases "public day school" and "in such a school" or whether the Roberts case controls.

The statute provides that, for teachers, only "salary" for "additional services" is part of regular compensation. There is no disagreement that the plaintiff's driver education classroom and road instruction constituted "additional services." Therefore, the issue is whether the plaintiff's hourly payments constitute "salary" for those additional services. Unless it is a technical term, "words and phrases [in a statute] shall be construed according to [their] common and approved usage." G. L. c. 4, § 6, Third. See *Coco v. School Comm. of Boylston*, 392 Mass 221, 224 (1984) (absent contrary legislative intent, words in statute should be accorded their plain and ordinary meaning). Although a common use of the word "salary" is "[a] reward or recompense for services performed," Black's Law Dictionary 1337 (6th ed. 1990), the term "salary" has another common use that is more limited — "A fixed periodical compensation paid for services rendered. A stated compensation paid periodically as by the year, month, or other fixed period, in *contrast to wages which are normally based on an hourly rate*" (emphasis added). *Id.* See S.C. Moriearty, J.F. Adkins, & S.L. Lipsitz, Employment Law § 14.1, at 493 (1995 & Supp. 1999) (discussing overtime exemption rules as applied to "salary rather than an hourly rate"). Furthermore, in *Coco v. School Comm. of Boylston, supra* at 224, and cases cited, where the meaning of the word "salary" in G. L. c. 71, § 43, was at issue, we said, "[t]here is considerable authority from other jurisdictions, and some guidance from Massachusetts precedent, for interpreting the term 'salary' to refer to a fixed annual or periodic amount of pay depending upon the period of employment rather than upon

the number of days or hours worked within that period."[5] This interpretation of the word "salary" also comports with the statutory definition provided in G. L. c. 4, § 7, Twenty-seventh: " 'Salary' shall mean annual salary."

It is the common, but more limited, fixed payment definition that applies to the term "salary" in this case. The definition of "[r]egular compensation" in G. L. c. 32, § 1, starts with three terms: "salary, wages or other compensation in whatever form." However, when the Legislature addressed teachers, it provided that only "salary" for additional services is part of regular compensation.[6]

All words, clauses, and parts of a legislative enactment should be given force and effect and no part is to be brushed aside unless no other rational course is open. *Hinckley* v. *Retirement Bd. of Gloucester*, 316 Mass. 496, 500 (1944). Where words in a statute are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute. *Beeler* v. *Downey*, 387 Mass. 609, 617 (1982), and cases cited. Where "the Legislature has carefully employed specific language in one paragraph of a statute . . . but not in others which treat the same topic . . . the language should not be implied where it is not present." *First Nat'l Bank* v. *Judge Baker Guidance Ctr.*, 13 Mass. App. Ct. 144, 153 (1982). See *Murphy* v. *Department of Correction*, 429 Mass. 736, 744 (1999); *Beeler* v. *Downey*, *supra* at 616; *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.*, 353 Mass. 81, 83-84 (1967). The statute uses the words "salary, wages or other compensation" within their common meaning to connote the *distinct* ways individuals are paid for services. As discussed, wages are usually a different form of payment from salary. See *Coco* v. *School Comm. of Boylston*, *supra*. If we were to include the plaintiff's hourly payments as part of his "salary," we would not be giving force to all the words of the statute. Furthermore, the board's regulation uses only the word "salary" where it defines "regular compensation." See 807 Code Mass. Regs. § 6.02 (1994).

---

[5]In *Coco* v. *School Comm. of Boylston*, 392 Mass. 221, 224-226 (1984), we stated that a school committee's decision to transfer a tenured physical education teacher to part-time status with a reduction in salary was prohibited by G. L. c. 71, § 43.

[6]By contrast, in the language addressing police officers, fire fighters, and certain employees of municipal departments, the statute uses "money paid for holidays" and "salary" when discussing what is to be included as "regular compensation."

The plaintiff argues that the words "shall be included in the salary" at the end of the definition of "[r]egular compensation" in G. L. c. 32, § 1, show that the word "salary" is meant in its broadest sense of a reward for services performed. Although this argument has some facial appeal, we conclude that, in context, the term is used to describe what has become regular compensation by specific statutory provisions. Moreover, the statutory intent is clearly to exempt irregular payments of compensation from the retirement base. (In G. L. c. 32, § 1, the definition of "[r]egular compensation" excludes bonus, overtime, or severance pay.) Hourly compensation paid on an irregular basis is more akin to overtime payments than to annual salary.

In analyzing the meaning of "regular compensation" in another context, this court stated: "The expression seems to us to point to recurrent or repeated amounts of compensation not inflated by extraordinary ad hoc payments." *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981). Regular compensation "refers to remuneration geared to work or services performed; moreover 'regular,' as it modifies 'compensation,' imports the idea of ordinariness or normality as well as the idea of recurrence." *Id.* Nothing in the text or the title of the act persuades us that the Legislature intended to include periodic hourly payments as part of regular compensation for teachers for the purpose of determining retirement benefits.

*Judgment affirmed.*