Gershengorn, J.
This case presents the question of whether student police officers, attending training at the Police Academy, are entitled to the hazardous duty stipend included in the pay of all other police patrol officers.[1] Central to this dispute are the definition and scope of the term “regular wages” as used in G.L.c. 41, §96B. Both parties have moved for summary judgment and claim that there is no dispute of material fact. For the following reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendant’s, motion for summary judgment is DENIED.
BACKGROUND
The following facts are undisputed and have been set forth by the parties in their cross motions for summary judgment.
When the City of Cambridge (the “City”) hires new police officers, it first sends them to the Police Academy for training. Under G.L.c. 41, §96B, these student officers receive the same amount of pay as “Step 1" new officers. General Laws chapter 41, Section 96B, states that:
Every person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study approved by the department of criminal justice training. The provisions of chapter thirty-one and any collective bargaining agreement notwithstanding, any person so attending such a school shall be deemed to be a student officer and shall be exempted from the provisions of chapter thirty-one and any collective bargaining agreement for that period during which he is assigned to a municipal police training school, provided that such person shall be paid the regular wages provided for the position he was appointed and such reasonable expenses as may be determined by the appointing authority and be subject to the provisions of chapter one hundred and fifty-two.
In July 1997, an interest arbitrator awarded the Cambridge Police Patrol Officers Association (the “Association”) a “hazardous duty” stipend to be paid monthly to all patrol officers regardless of the conditions under which they work. This award did not affect other stipends and pay differentials that applied when an officer worked holidays, weekends, or night shifts, *198 or those that applied because an officer had specialized training.
Presently, the City pays student officers the base salary of an officer that has recently completed training and has commenced his or her police powers. The City does not, however, pay student officers any hazardous duty stipend. Neither does the City pay student officers any other stipends or pay differentials based upon conditions of assignments or specialized training.
The plaintiff alleges that the City is violating G.L.c. 41, §96B, by not paying student officers a hazardous duty stipend. The City, on the other hand, argues that G.L.c. 41, §96B, covers only “regular wages,” and that a hazardous duty stipend, along with all other stipends or pay differentials, does not fall into this category. The parties have filed cross motions for summary judgment and are asking this Court to determine whether G.L.c. 41, §96B, covers the hazardous duty stipends.
DISCUSSION
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles a party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
As noted above, G.L.c. 41, §96B, provides that a student patrol officer while in training “shall be paid the regular wages provided for the position to which he was appointed.” The issue in dispute is whether “regular wages” includes hazardous duty pay. The term “regular wages” is not defined by the statute, applicable regulations, or case law interpreting the statute. This Court, therefore, must look elsewhere for guidance in crafting an appropriate definition.
Generally, “words and phrases shall be construed according to [their] common and approved usage.” Coco v. School Comm. of Boylston, 392 Mass. 221, 224 (1984) (absent contrary legislative intent, words in a statute must be given their ordinary meaning). “The legislature should be supposed to have adopted the common historical meaning of the word, as assisted by a consideration of the historical origins of the enactment.” Jancey v. School Committee of Everett, 421 Mass. 482, 490 (1995), quoting Westinghouse Broadcasting Co. v. Commissioner of Revenue, 382 Mass. 354, 357 (1981).
In Jancey, the Supreme Judicial Court interpreted the Massachusetts Equal Pay Act, G.L.c. 149, §105A, a statute that included the term “wages” but did not provide a definition of this term. 421 Mass, at 493. After reviewing the definitions of “wages” found in Black’s Law Dictionary as well as other areas of law, the court adopted, for the purposes of that case, a broad definition of the term finding that it includes all forms of remuneration, whether periodic or a one-time payment.[2] Id.
In other areas of law, the Massachusetts legislature has had the opportunity to establish a definition of “wages.” General Laws chapter 151A, §1, includes in its definition, employer contributions to 40 IK and similar retirement or deferred compensation plans. On the other hand, G.L.c. 152, §1, greatly limits its definition of “average weekly wages” by stating that “such fringe benefits as health insurance plans, pensions, day care, or education and training programs provided by employers shall not be included in employee earnings for the purpose of calculating average weekly wages under this section.” This Court also notes that G.L.c. 32, §1, in its definition of “[a]nnual gross earned income,” distinguishes among wages, salaries, gratuities, and other forms of payment, and refers to them collectively as compensation.
In sum, there is no uniform definition of the term “wages” in Massachusetts law or elsewhere.[3] This Court finds, therefore, that it should follow the Supreme Judicial Court’s reasoning in Jancey and adopt a definition of “wages” that would include hazardous duty pay.[4]
In 1994, the legislature amended G.L.c. 41, §96B, by adding the word “regular” to “wages,” and such an amendment indicates that the legislature intended to differentiate between “regular wages” and “wages.” The legislature’s use of the term “regular” narrows the scope of the term “wages.” In short, “regular wages” is essentially a subset of “wages.”
In similar situations, the courts have distinguished between the words “regular compensation” and “compensation,” finding that the addition of the term “regular” narrows the scope of the other term. See Hallett v. Contributory Retirement Appeal Board, 431 Mass. 66, 70 (2000). In Hallett, the court stated that “(t]he expression [regular] seems to us to point to recurrent or repeated amounts of compensation not inflated by extraordinary ad hoc payments. Regular compensation refers to remuneration geared to work or normality as well as the idea of recurrence.” Id., quoting Boston Association of School Administrators and Supervisors v. Boston Retirement Board, 383 Mass. 336, 341 (1981). The court in Hallett ultimately determined that periodic hourly payments, paid on an irregular basis, were not “regular compensation.”[5]
Consistent with the underlying reasoning of Hallett, this court must look to whether the hazardous duty stipend fits within the narrowed definition of “regular wages” by considering whether the hazardous duty stipend at issue is an ordinary, normal, and recurrent payment for patrol officers. Hazardous duty pay is not mandated by statute but rather is the result of the plaintiffs collective bargaining agreement. Pursuant to the agreement, all of the City’s patrol officers are contractually entitled to hazardous duty pay. Hazardous duty pay is paid to every officer on a monthly basis *199 regardless of that officer’s actual shift, education, or hours worked. Officers who are assigned desk duty receive hazardous duty pay to the same extent as officers assigned to the street. This is not a situation where the payments are sporadic and irregular; instead, this is a situation where the payments are made on a regular basis and are part of every officer’s total pay.
Moreover, a stipend for hazardous duty differs from other stipends and pay differentials that are awarded based on experience, training, or the circumstances surrounding the officer’s assignment. The effect of, and most likely the intent behind, the collective bargaining agreement’s, and the arbitrator’s, allowance for hazardous duty pay is to increase the salary of all officers by a uniform amount. Had the parties to the agreement, or the arbitrator, wished to place any limitations or conditions on hazardous duty pay they could easily have done so. Instead, under the terms of the agreement, every officer, regardless of his or her assignment, experience, or other factors, receives each month a stipend that is tied to nothing else but his or her position and status as an officer. Thus, this Court finds that hazardus duty pay is an ordinary, normal, and recurrent payment for all officers, and falls therefore within the definition of “regular wages” as that term is utilized in G.L.c. 41, §96B.[6]
ORDER
For all of the above reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment be ALLOWED, and the defendant’s motion for summary judgment be DENIED.

 The defendant, in its summary judgment motion, raised the argument that the plaintiff did not have standing to bring this action. This issue is now moot as the parties have agreed that the plaintiff will file an assented-to motion to amend the complaint to add an appropriate individual as a new plaintiff.

 In Jancey, the court quoted Black’s Law Dictionary, which defines “wages” as:
Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual’s employer or directly with respect to work for him... Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed . . .
Jancey, 421 Mass. at 490-91, citing Black’s Law Dictionary, 1579 (6th ed. 1990).
The court then looked to a regulation promulgated in relation to the Federal Equal Pay Act, 29 U.S.C. §206(d)(1), that defines “wages” as:
all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit, sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name. Fringe benefits are deemed to be remuneration for employment.
Jancey, 421 Mass. at 492, citing 29 C.F.R. §1620.10.

 This Court further notes that the legislature could have easily narrowed the definition and scope of the term “wages” found in G.L.c. 41, §96B, as it has in G.L.c. 152, §1, and G.L.c. 32, §1.

 This Court is not ruling that all forms of compensation are wages, merely that in this case, “wages" includes hazardous duty pay.

 In Hallett, the court focused more on the definition of “salary” than on the definition of “regular compensation,” and was interpreting the definitions in the context of G.L.c. 32.

 Absent any support, the defendant argues that hazardous duty pay is tied to an officer’s actual performance of hazardous duty. This argument is contradicted by the fact that even,- officer, regardless of his or her actual shift responsibilities, receives hazardous duty pay.