## MANUEL DAVID VARELLA *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

No. 00-P-1303.

Suffolk. May 10, 2002. - November 7, 2002.

Present: LAURENCE, COWIN, & GREEN, JJ.

*School and School Committee,* Retirement benefits. *Retirement. Contributory Retirement Appeal Board. Administrative Law,* Regulations. *Statute,* Construction. *Words,* "Regular compensation."

A Superior Court judge, pursuant to G. L. c. 30A, § 14, correctly upheld the denial by the Contributory Retirement Appeal Board of a claim by a public school teacher that certain yearly stipends received by him as co-director of a town's educational evening program should be deemed "regular compensation" under G. L. c. 32, § 1, for the purpose of determining his retirement allowance, where it was the intent of the Legislature that only compensation paid for services that affect the educational experiences of students enrolled in regular public school programs was to be included in the retirement benefit calculation. [386-390]

CIVIL ACTION commenced in the Superior Court Department on September 7, 1999.

The case was heard by *Carol S. Ball,* J.

*Kenneth A. Grace* for the plaintiff.

*James H. Salvie* for Teachers' Retirement Board.

COWIN, J. The plaintiff appeals from a judgment of the Superior Court pursuant to G. L. c. 30A, § 14, upholding a denial by the defendants of his claim that certain yearly stipends received by him as co-director of an evening educational program in the town of Easton should be deemed "regular compensation," G. L. c. 32, § 1, for the purpose of determining his retirement allowance. We affirm.

1. *Material facts and prior proceedings.* The meaningful facts

---

[1]Teachers' Retirement Board.

do not appear to be disputed. The plaintiff was a teacher in the public schools of Easton from 1958 until his retirement in 1996. He was a member of the teachers' retirement system and of a bargaining unit covered by the provisions of a collective bargaining agreement. Between 1984 and 1996, the plaintiff was a co-director of the Easton Evening Program, a position for which he received payments of $1,346, $1,413.50, and $1,484 during the three years preceding his retirement.[2] His duties in connection with the position, as well as his compensation therefor, were governed by the collective bargaining agreement applicable to his bargaining unit.

The Easton Evening Program is open to the public and a fee is charged to attend. During most of the years in which the program operated, a few high school students, with the prior permission of school officials, attended in order to obtain sufficient credits to graduate with their class. The program features courses such as typing, word processing, American sign language, flag making and pop piano. Almost all of the courses are conducted at the Oliver Ames High School. They are generally held in the evening between 6:00 P.M. and 9:00 P.M., although some take place in the afternoon between 2:10 P.M. and 3:30 P.M. High school office equipment and supplies are used for the program, and the high school secretary handles registration.

The plaintiff's regular teaching duties consisted of teaching four periods of biology each school day at Oliver Ames High School. His duties as co-director of the Easton Evening Program were in addition to his regular teaching duties, and consisted of supervising the program two evenings and two afternoons each week, and interviewing prospective teachers. In addition, he used a planning period available to him each day as part of his regular teaching duties for evening school purposes. He did not teach in the evening program.

Although retirement deductions were routinely taken from

[2] The three years are significant because the plaintiff's retirement allowance is based on regular compensation (as defined) received by him during any period of three consecutive years of creditable service for which his rate of such compensation was the highest, or on regular compensation (as defined) received by him during his last three years of creditable service, whether consecutive or not, whichever is greater. See G. L. c. 32, § 5(2)(a).

the stipend paid the plaintiff as co-director of the evening program, upon his retirement he was informed that the stipend would not count toward calculation of his retirement benefits, and the deductions were refunded to him. The Teachers' Retirement Board subsequently concluded formally that the compensation was not eligible for inclusion in the retirement determination, and the plaintiff appealed to the Contributory Retirement Appeal Board (CRAB). The matter was referred to the Division of Administrative Law Appeals, where the decision of the Teachers' Retirement Board was upheld by an administrative magistrate. On further review, the decision was also affirmed by CRAB. The plaintiff then sought judicial review in the Superior Court, G. L. c. 30A, § 14, and it is the Superior Court judge's affirmance of CRAB's decision that the plaintiff now challenges.

2. *Discussion.* The case turns on the meaning of that portion of G. L. c. 32, § 1, that defines "regular compensation" for the purpose of determining teachers' retirement entitlements. What is and is not "regular compensation" is important because, under G. L. c. 32, § 5(2)(a), a public employee's retirement allowance is based only on the average "regular compensation" he or she has earned during a three-year measuring period. See note 2, *supra.* "Regular compensation" is defined as "the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement." G. L. c. 32, § 1, as amended by St. 1979, c. 681. This clause states the definition for public employees in general, but is refined thereafter in the statute by a clause applying to teachers. See *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 231-232 (1999). That later clause provides:

> "In the case of a teacher employed *in a public day school* who is a member of the teachers' retirement system, salary payable under the terms of an annual contract for additional services *in such a school* and also compensation for services rendered by said teacher in connection with a school lunch program or for services in connection with a program of instruction of physical education and athletic

contests . . . shall be regarded as regular compensation rather than as bonus or overtime and shall be included in the salary on which deductions are to be paid to the annuity savings fund of the teachers' retirement system" (emphases supplied).

G. L. c. 32, § 1, as amended by St. 1957, c. 516, § 2. This portion of the definition thus attempts to deal with the fact that teachers typically perform numerous functions, not all of which are easily subsumed within traditional notions of "teaching," and to prescribe which functions shall generate compensation to be included in the retirement benefit calculation and which shall not.

CRAB disposed of the case by relying on its prior interpretation of the "regular compensation" definition as compensation for services that take place during normal school hours. Finding that a majority of the plaintiff's duties as co-director of the evening program were performed after regular school hours, that the program is open to the public, and that a majority of the participants are not earning credit toward high school graduation, CRAB concluded that the payments received by the plaintiff were not for duties as a teacher in the regular school system, and thus were not "regular compensation" under G. L. c. 32, § 1.

Upon review under G. L. c. 30A, § 14, of CRAB's determination, the judge, while acknowledging that the agency's expertise required deference to its interpretations, *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 689, 691-692 (1998), disregarded CRAB's reliance on the fact that most of the plaintiff's duties as co-director of the evening program were performed after regular school hours. Rather, the judge affirmed because, in her view, CRAB had correctly found that the plaintiff's functions in this regard were not directed to high school teaching, and thus were not related to the mission of a "public day school." The plaintiff asserts that the judge's conclusion is erroneous because the exclusion of the stipend in question from the retirement calculation was based on an error of law and was unsupported by substantial evidence.

We considered the meaning of "regular compensation" as used in G. L. c. 32, § 1, in *Evans* v. *Contributory Retirement*

*Appeal Bd., supra* at 233-234, wherein we concluded that CRAB correctly determined that "regular compensation" did not include a teacher's summer school salary. In so doing, we gave weight to the technical competence of the administrative agency, stating that "[i]n the notoriously difficult, sometimes tortuous, field of retirement rights and calculations, there is particular reason for giving deference to the agency's expertness." *Id.* at 233. In *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 68-70 (2000), the Supreme Judicial Court agreed with CRAB that hourly wages paid to a teacher for teaching driver education before and after normal school hours were not "regular compensation," but the court's conclusion was based entirely on the fact that the hourly wages in question were not "salary" as that term is used in the portion of G. L. c. 32, § 1, applicable to additional services by teachers. The particular circumstances present in the plaintiff's case do not appear to have been judicially addressed.

The plaintiff satisfies certain of the criteria set forth in the statute as conditions for treatment of his co-director's stipend as regular compensation. He was employed in a public day school. He was a member of the teachers' retirement system. The stipend paid for performing the duties of co-director of the evening program can be considered "salary," thereby eliminating the ground on which the decision in *Hallett* turned. The plaintiff's duties were performed, and the stipend paid, under the terms of an annual contract for additional services.[3] While the plaintiff did not teach in the evening program, his administrative functions certainly fall within the scope of educational services.

However, consistently with the ruling of the judge, we conclude that a fact essential to a determination that the stipend is "regular compensation" is missing. The teacher must be employed in a public day school, which the plaintiff was. But it is also a requirement that the salary for additional services, in order to count as "regular compensation," must be "for ad-

---

[3]"Annual contract" as used in G. L. c. 32, § 1, refers to the collective bargaining agreement between the teachers' association and the school committee. See *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. at 67 n.4.

ditional services in such a school," in other words, a public day school. Here, the public day school at which the plaintiff taught was Oliver Ames High School. The Easton Evening Program was not meaningfully related to the regular high school experience. It was essentially an adult education or extension program, and the fact that high school students might occasionally attend for credit did not render it an adjunct of the high school. Students attended the high school pursuant to legal requirements regarding compulsory education that were not applicable to the evening program. As the judge observed, the evening program was available to the community at large, its focus being quite different from that of a public high school attended by young people following a prescribed curriculum in pursuit of a high school diploma.[4]

The plaintiff relies on the language of 807 Code Mass. Regs. § 6.02(1)(b) (1994), a regulation of the Teachers' Retirement Board that prescribes criteria for the inclusion of compensation as "regular compensation" in the retirement benefit calculation. That regulation establishes as conditions for such inclusion that the additional services for which such compensation is paid must be set forth in the annual contract; the services must be educational in nature; the annual contract must provide for the remuneration for such services; and the services must be performed during the school year. The plaintiff argues that the plaintiff's services as co-director of the evening program satisfied each of these requirements. That is not sufficient. While the regulation may prescribe threshold criteria for inclusion, the specified criteria, though necessary, do not by themselves establish that given remuneration is "regular compensation." The regulation does not stand for the proposition, nor could it, that satisfaction of such criteria requires inclusion where the salary is not otherwise paid for services in a public day school.

---

[4]We agree with the judge that where and when the additional services are rendered are not determinative. In particular, we think it clear (and the plaintiff does not contend otherwise) that the mere location of the evening classes within the high school building does not mean that the classes are "services in such a school." Nevertheless, CRAB was entitled to give some weight to these factors, among others, in deciding whether the additional services had been performed "in a public day school."

That requirement is express in G. L. c. 32, § 1, and cannot be altered by a regulation.

The plaintiff also urges that we take notice of the Education Reform Act passed by the Massachusetts Legislature in 1993, and particularly those provisions of the Act that emphasize the continuing importance of education in adult life. See St. 1993, c. 71. These provisions do not strike us as relevant to the present issue. The legislation in question was a response to perceived problems in public education, not a subliminal attempt to expand the definition of a "public day school" or to alter how teachers' retirement benefits are to be calculated. Had it been the Legislature's purpose to change the concept of a "public day school" or the definition of "regular compensation," it would presumably have done so by amending G. L. c. 32, § 1.

Our reading of the statute convinces us that it is the Legislature's intention that only compensation paid for services that affect the educational experiences of students enrolled in regular public school programs is to be included in the retirement benefit calculation. That is why compensation for services in a school lunch program or as an athletic coach qualifies, but summer school teaching does not. CRAB's decision accurately reflects this legislative preference. There was no error.

*Judgment affirmed.*