J. ROBERT EVANS *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 97-P-1341.

Suffolk. November 17, 1998. - January 26, 1999.

Present: LAURENCE, KAPLAN, & DREBEN, JJ.

*School and School Committee,* Retirement benefits. *Retirement. Contributory Retirement Appeal Board. Administrative Law,* Agency. *Statute,* Construction. *Words,* "Regular compensation."

The Contributory Retirement Appeal Board correctly concluded that a teacher's summer school salary was not "regular compensation" under G. L. c. 32, § 1, and applicable regulations, and as a consequence could not be included in the calculation of the annual rate upon which retirement benefits are paid. [231-234]

CIVIL ACTION commenced in the Superior Court Department on September 4, 1996.

The case was heard by *Patrick J. King,* J.

*Christina C. Duddy* for the plaintiff.

*Jane L. Willoughby,* Assistant Attorney General, for Contributory Retirement Appeal Board.

*Carol E. Nesson,* for Boston Retirement Board, was present but did not argue.

KAPLAN, J. In June, 1994, the plaintiff, J. Robert Evans, retired from his teaching position. For thirty-eight years, from September, 1956, through June, 1994, he had taught health and physical education in the Boston public schools (with service also as a coach). In some fourteen of those years, he taught U.S. history and civics in public summer schools at various Boston locations and was separately paid for each term served. Retirement withholdings were made from his ordinary salaries, but there were no such withholdings from his summer school salaries.

---

[1]Boston Retirement Board.

On August 5, 1994, the plaintiff wrote to the Boston school department asking, in effect, that they bill him for an amount to represent retirement withholdings from his summer school salaries in the consecutive years 1991, 1992, and 1993 ($2,880 each). This request was intended as a predicate for his claim that the amount of his summer salaries should be added to his ordinary salaries to figure in the base for calculating his retirement benefits for the future.

On August 30, 1994, the plaintiff's attorney wrote more formally to the Boston retirement board, offering the amount of the omitted withholdings and presenting the claim that the summer earnings for the three years should be treated as "regular compensation" under G. L. c. 32, § 1, and the interpretive regulation, 840 Code Mass. Regs. § 15.03 (1989), thus enhancing the base of the retirement calculations as carried out under c. 32, § 5(2)(*a*), noted in the margin.[2]

Preparing to answer counsel's claim, the Boston retirement board had an exchange with the Boston school department (letters of September 15 and 23, 1994). The board wrote, "As you know, retirement deductions are not withheld from wages paid for this type of service [in summer schools]." The department said the contract between the Boston school committee and the Boston teachers union set the length of the school year (1993-1994) at 183 days, and (referring particularly to the regulation) "summer school positions are not an extension of a teacher's regular work year." The department also said that applications for summer school positions are solicited each year by a personnel circular, contingent on funding; selections are made by the director of adult education from the pool of applicants; there is no assurance of future summer employment. The summer workday is from 8:30 A.M. to 12:30 P.M., and the semester runs thirty-four days. Summer school rates of pay are set out in the contract with the Boston teachers union (a separate schedule).

On October 13, 1994, the Boston retirement board wrote to the plaintiff's counsel rejecting his claim. The plaintiff took his

---

[2]Omitting some qualifiers in the text, § 5(2)(*a*), as amended through St. 1961, c. 190, § 1, states: "The normal yearly amount of the retirement allowance for any member : . . . who has paid the full amount of regular deductions on the total amount of regular compensation . . . shall . . . be based on the average annual rate of regular compensation received by such member during any period of three consecutive years of creditable service for which such rate of compensation was the highest . . . ."

appeal to the defendant Contributory Retirement Appeal Board (CRAB), which referred the matter to the Division of Administrative Law Appeals. An administrative magistrate on January 7, 1996, after hearing, decided against the plaintiff upon findings covering the facts above stated, and CRAB on August 15, 1996, affirmed, adopting the magistrate's findings as its own and incorporating her decision.

The plaintiff petitioned for review of the CRAB decision under the State Administrative Procedure Act, G. L. c. 30A, § 14. A judge of the Superior Court rendered judgment affirming the decision. From this judgment the plaintiff took the present appeal. The judgment should be affirmed.

*Discussion.* We sum up the case, adding little to the analysis by the retirement board, CRAB (by adoption), and the judge.

Section 1 of G. L. c. 32, as amended through St. 1979, c. 681, reads in part:

> " 'Regular compensation' . . . shall mean the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement . . . .

> "In the case of a teacher employed in a public day school who is a member of the teachers' retirement system, salary payable under the terms of an annual contract for additional services in such a school and also compensation for services rendered by said teacher in connection with a school lunch program or for services in connection with a program of instruction of physical education and athletic contests as authorized by section forty-seven of chapter seventy-one shall be regarded as regular compensation rather than as bonus or overtime and shall be included in the salary on which deductions are to be paid to the annuity savings fund of the teachers' retirement system."

The first portion of text just quoted states a general theme which is particularized in the second portion applicable to teachers in public day schools. "[S]alary payable under the terms of an annual contract for additional services in such a school . . . shall

be regarded as regular compensation rather than as bonus or overtime" and "shall be included in the salary on which deductions are to be paid."

One can argue that summer salary is payable under an "annual" contract for the given year, and the summer services are "additional" because outside the claimant's ordinary full-time program. The defendants would think such a reading quite strained. Against the background of teachers' usual bargained arrangements, the "annual contract" mentioned seems rather to be the year-to-year collective bargaining agreement, and the "additional services" look to those that could be specified by that agreement for performance in an extension of the normal period, here the 183 days of the ordinary school year. Salary for such "additional services" is to be "included in the salary on which deductions are to be paid." The fact that there never have been withholdings from summer school earnings suggests that the summer school period has not been regarded as an extension of the normal period, but as a separate period of service, outside the category of "regular compensation." See note 2, *supra*.

Entering into the discussion is the regulation of the Division of Public Employee Retirement Administration that applied generally to public employees, 840 Code Mass. Regs. § 15.03.

> *"Regular Compensation.*
>
> "(1) During any period of active service subsequent to the effective date of this subsection the term 'regular compensation' as defined by M.G.L. c. 32, § 1, shall include:
>
> (a) the member's annual rate of compensation as provided in an approved salary schedule . . . .
>
> "(2) During such period the term 'regular compensation' as so defined shall not include:
>
> (a) Any amounts paid for hours worked beyond the member's normal work schedule. . . ."

Again it may be suggested that "annual rate" and "approved salary schedule" can apply to the single year engagement for summer work, and that the exclusion of 2(a) does not apply because summer pay is for hours worked on a schedule normal for summer work and not for hours "beyond." The defendants

would answer that the regulation is centering its attention on the ordinary collective agreement: while this sets the rate for summer work, the summer period is not an extension of the normal school year, it is a separate period "beyond" it.[3]

On the whole we think the defendants have the better of the argument about the meaning of the statutes and regulation. But the question here on appeal is not a matter of a court's considered preference unconfined by what the administrators have had to say. In such matters of interpretation the court is admonished by G. L. c. 30A, § 14(7), as amended by St. 1973, c. 1114, § 3, to give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." See *Massachusetts Org. of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 924 (1983); *United States Jaycees* v. *Massachusetts Commn. Against Discrimination*, 391 Mass. 594, 600 (1984). In the notoriously difficult, sometimes tortuous, field of retirement rights and calculations, there is particular reason for giving deference to the agency's expertness, see *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 n.10 (1996), and cases cited, and so the judge below recognized in his opinion.

The judge thought the agency decision was consistent with the general view of "regular compensation" expressed in *Boston Assn. of Sch. Admrs. & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336 (1981). At issue were early retirement incentive payments; the court held they were not to be considered regular compensation under the statutes (perhaps an easier case than ours). The court said: "The yearly amount of a retirement allowance is by [G. L. c. 32,] § 5(2)(*a*) to be based on the 'average' rate of 'regular compensation' over the three years. The expression seems to us to point to recurrent or repeated amounts of compensation not inflated by extraordinary ad hoc payments. This view is confirmed when we go to the definition of 'regular compensation' in § 1 . . . . [T]he whole refers to remuneration

[3]The plaintiff complains that the administrative magistrate in the course of her decision referred to 807 Code Mass. Regs. § 602(2), a regulation of the Teachers Retirement Board which states expressly that regular compensation shall not include amounts paid for summer work unless the annual contract requires the teacher to work for eleven or twelve months. The magistrate of course understood that regulations of the Teachers Retirement Board did not extend to the Boston Retirement Board; she pointed out that the position of the Boston Board was consistent with that of the Teachers Board.

geared to work or services performed; moreover 'regular,' as it modifies 'compensation,' imports the idea of ordinariness or normality as well as the idea of recurrence . . . . Taking § 5(2)(*a*) together with § 1 we find a safeguard against the introduction into the computations of adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems." 383 Mass. at 341.[4]

*Judgment affirmed.*

---

[4]By St. 1979, c. 681, enacted pending the *Boston Assn.* case but not relied on by the court in reaching its decision, "early retirement incentives" were expressly excluded from regular compensation, as defined in c. 32, § 1. These incentives are similarly excluded by 840 Code Mass. Regs. § 15.03(2)(e) (1989).