HENRY KOZLOSKI vs. CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 02-P-83.

Suffolk. June 3, 2003. - September 7, 2004.

Present: ARMSTRONG, C.J., SMITH, & DUFFLY, JJ.

*Public Employment,* Retirement, Collective bargaining. *Retirement. School
and School Committee,* Retirement benefits, Collective bargaining. *Admin-
istrative Law,* Judicial review, Substantial evidence. *Teachers' Retirement
Board. Contributory Retirement Appeal Board. Words,* "Regular
compensation."

This court concluded that the defendant Contributory Retirement Appeal
Board acted within its authority in determining that extra compensation the
plaintiff received for serving as the audio-visual coordinator of the public
high school at which he taught science did not qualify as "regular"
compensation to be included as additional services under G. L. c. 32, § 1,
in the computation of his retirement allowance pursuant to G. L. c. 32,
§ 5(2)(a), where such additional services and compensation were not
explicitly set forth in the collective bargaining agreement in effect for the
plaintiff's unit as required by regulations of the Teachers' Retirement
Board. [786-789]

CIVIL ACTION commenced in the Superior Court Department on
March 29, 2001.

The case was heard by *Ralph D. Gants,* J., on a motion for
judgment on the pleadings.

*Matthew D. Jones* for the plaintiff.

*James H. Salvie* for the defendants.

ARMSTRONG, C.J. Henry Kozloski was a high school science
teacher from September, 1964, until his retirement on June 30,
1999. The case concerns the computation of his retirement al-
lowance which, under the statute, G. L. c. 32, § 5(2)(a), is
based on a percentage of the average of his three highest

[1]Teachers' Retirement Board.

consecutive years of regular compensation (typically the final three years). The question is whether the $1,500 per year Kozloski received as extra compensation for serving as the school's audio-visual coordinator qualifies as "regular" compensation to be included in the computation. The Teachers' Retirement Board (TRB) ruled that it did not. The Contributory Retirement Appeal Board (CRAB), on Kozloski's appeal, agreed with the TRB, as did the Superior Court judge in reviewing CRAB's decision.

The definition of "regular compensation" in G. L. c. 32, § 1, excludes extras such as bonuses, overtime, severance pay, and certain other payments, but specifically includes, for those in the teachers' retirement system, "salary payable under the terms of an annual contract for additional services in such a school." In 1994 the TRB by regulation[2] defined "annual contract" to mean the collective bargaining agreement in effect for the unit and the term "regular compensation" to include "[s]alary payable under the terms of an annual contract for additional services so long as: (1) [t]he additional services are set forth in the annual contract." 807 Code Mass. Regs. §§ 6.01, 6.02 (1994).

Kozloski served as the high school's audio-visual coordinator from the 1988-1989 school year until he retired in 1999. The collective bargaining agreement in effect in 1988-1989 listed the position and the stipend paid for it (then $800), and by extensions, that agreement remained in effect through August, 1993.

There were no references to a stipend for the same audio-visual coordinator position in the two subsequent collective bargaining agreements between the teachers' union and the school board, which (as extended by side contracts) covered the period from September, 1993, to August, 1999, even though both agreements contained a schedule entitled "Co-Curricular Stipend, Extra Paid Assignments," which listed the stipends for

---

[2]The rule-making power of the board is derived from G. L. c. 15, § 16, as appearing in St. 2000, c. 159, § 37, which establishes the "board for the purpose of administering the teachers' retirement system," and G. L. c. 32, § 20(5)(b), which confers the power to "adopt by-laws and make rules and regulations consistent with law . . . ." See *Opinion of the Justices*, 364 Mass. 847, 852-853 (1973); *School Comm. of Brockton* v. *Teachers' Retirement Bd.*, 393 Mass. 256, 261 (1984).

many other extra work positions. The coordinator position and the stipend for it were not mentioned in any other contemporaneous writing.[3]

In June, 1999, the TRB, in response to a question from Kozloski, concluded that the stipend paid in the last three years of Kozloski's service ($1,500 each year) did not qualify for inclusion in his three-year average salary as "regular compensation" because the collective bargaining agreements in effect during the period made no mention of the position. Kozloski took an appeal from that decision to CRAB.

While the CRAB case was pending, a representative of the teachers' union and a representative of the school board signed a "memorandum of agreement" which stated that "certain stipend positions were inadvertently omitted in the drafting of collective bargaining agreements," namely, the audio-visual coordinator and a music enrichment lesson program instructor. The memorandum, dated April 28, 2000, postdated the expiration of the 1996 collective bargaining agreement and Kozloski's June, 1999, retirement and recited that the position involved services of an educational nature and "should" have been listed in the collective bargaining agreement.

Meanwhile, CRAB referred the case for de novo hearing before an administrative magistrate of the division of law appeals, see G. L. c. 32, § 16(4), who found in favor of Kozloski, concluding that the omission of the audio-visual coordinator position and stipend from the 1996 collective bargaining agreement had been "rectified" by the April 28, 2000, memorandum of agreement.[4] The TRB filed written objections to the magistrate's decision and sought further review from CRAB.

Though it adopted the administrative magistrate's factual findings, CRAB rejected her conclusions and upheld the TRB's

---

[3]Kozloski's stipends were subjected to annual deductions for contribution to the teachers' retirement fund, but those contributions were later refunded to him. Compare *Varella* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 384, 385-386 (2002).

[4]The magistrate also concluded that the audio-visual coordinator position and stipend "must have been the subject of bargaining because the stipend increased from $1200 to $1500 in 1993, despite the fact that the 1993 CBA fails to mention it." The defendants correctly observe that there was no evidence to support that conclusion.

decision, ruling that, because the stipend was not included in the collective bargaining agreement, it did not constitute "regular compensation" within the meaning of G. L. c. 32, § 1. On judicial review in the Superior Court pursuant to G. L. c. 30A, § 14, a judge upheld CRAB's decision.

*Discussion.* As to matters of interpretation of the retirement laws and application of the law, the judge was required, as are we, to give "due weight to the experience, technical competence, and specialized knowledge of the [TRB,] as well as the discretionary authority conferred upon it." G. L. c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3. See *Barnstable County Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 43 Mass. App. Ct. 341, 345 (1997). Similar deference is due to adjudicatory decisions of CRAB, to which generally is entrusted final responsibility for the administration and uniform application of the retirement laws. "In the notoriously difficult, sometimes tortuous, field of retirement rights and calculations, there is particular reason for giving deference to the agency's expertness[.]" *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 233 (1999). See *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996). A court "may not set aside a CRAB decision, not otherwise legally erroneous, that is supported by substantial evidence." *Ibid.*

This case involves the exception in G. L. c. 32, § 1, applicable only to public day school teachers for whom "regular compensation" also includes "salary payable under the terms of an annual contract for additional services in such school."[5] The TRB's regulations require that the additional service and the compensation therefor be explicitly set forth in the collective bargaining agreement.

Kozloski argues that the regulations represent an unlawful

---

[5]The same exception was the subject of recent discussion in *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 67 (2000) (driver education program); *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 231-232 (1999) (summer school salary); *Varella* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 384, 386 (2000) (codirector of evening education program). In each case the decision of CRAB denying treatment as regular compensation was upheld by the court.

abuse of the TRB's rule-making authority (see note 2, *supra*), because they exclude from the pension base additional service arrangements that are educationally related and wholly appropriate for inclusion but for the fact that they are not listed in the collective bargaining agreement. Moreover, Kozloski argues, some teachers covered by the teachers' retirement system are not within collective bargaining units (charter school teachers, for example) and thus are not covered by collective bargaining agreements in which additional services can be set forth conformably to the regulation.

Neither argument is persuasive. The regulations are designed to bring certainty and definiteness to the words "annual contract" as used in G. L. c. 32, § 1, the obvious purpose of which is to provide clear records of approved stipends so as to avoid confusion and uncertainty at some later time when retirement boards are called upon to calculate pension benefits and would be in an untenable position if they had to sift through a multiplicity of alleged oral or side agreements about which memories might well be hazy. Our courts have pointedly observed that, in reading G. L. c. 32, § 1, with § 5(2)(*a*), "we find a safeguard against the introduction into the [retirement benefit] computations of adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems. [Such a] safeguard is needed especially where the public entity that negotiates a collective [bargaining] agreement is not the one that will have to find the funds to pay the continuing retirement benefits above the avails of employee contributions." *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981).

As to the argument that some few employees may not be covered by collective bargaining agreements, the answer is that this is not such a case, and the application of the regulations to such an employee does not raise an issue of *facial* invalidity. Indeed, a court may never have occasion to reach that issue unless the TRB and CRAB should one day insist on applying the regulations to exclude from consideration otherwise additional services arrangements performed by employees not under collective bargaining agreements.

Apart from the validity of the regulations, Kozloski chal-

lenges the decisions of both the TRB and CRAB for their refusal to accept the April 28 "memorandum of agreement" as an adequate substitute for the contemporaneous inclusion of the audio-visual coordinator position in the collective bargaining agreement.

The contention that the memorandum should suffice has weaknesses on several levels. First, as a purely technical matter, the memorandum of agreement postdated the decision of the TRB, which, barring some other, unargued flaw, was correct when made. If CRAB's function is to review the correctness of the TRB's decision, it cannot be faulted for so recognizing.

CRAB in fact took a broader view of its role, as was probably appropriate, since the statutory scheme assigns to CRAB the primary function of ascertaining the facts of the case, *Namay v. Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 461-462 (1985), presumably as they exist at the time of its own proceedings. Nevertheless, CRAB was properly skeptical about the effect to be given to the memorandum of agreement. The memorandum purporting to clarify the collective bargaining agreement was entered into six years after the last of the applicable collective bargaining agreements had been fully performed and the period to which it related had passed. Moreover, the two individuals who signed the memorandum of agreement, different from the individuals who had signed the collective bargaining agreement, were not shown to have knowledge of the negotiations at the time the collective bargaining agreements were entered into nor to have been authorized to speak for the school committee or the union even in 2000.

Conclusive to CRAB, however, was the fact that, whether the omission was inadvertent or not, the position of audio-visual coordinator was simply not included in the relevant collective bargaining agreements under which Kozloski worked for the three-year period that was the basis for his pension calculation. Giving full weight to the assertion that the parties to the collective bargaining agreement had intended to include the coordinator position in the schedule, CRAB reasonably took the view that the decisive fact under the regulations was that the audio-visual coordinator position was not included, rather than the reason it was not included.

There is no basis for us to disturb CRAB's decision. See, e.g., *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. at 252 n.6. CRAB, the agency charged with responsibility for the orderly administration of retirement adjudications and with enforcing uniform application of the retirement laws, acted within the scope of its authority. To adopt the alternate approach would cause administrative magistrates in many cases to have to delve through testimony of the type received by the magistrate here, as to the reasons why some additional service stipend was omitted from the collective bargaining agreement and whether it would have been eligible for inclusion. Such a focus, CRAB could reasonably conclude, strayed too far from the statutory requirement that, to be eligible for inclusion in the pension computation, the additional service stipend must have been provided for in the collective bargaining agreement. There was no error.

*Judgment affirmed.*