Riley, Patrick J., J.
INTRODUCTION
Before the Court are numerous actions arising out of municipal retirement boards’ denials of requests from the plaintiffs, who are retired police and fire chiefs, to calculate retirement benefits to include as part of their “regular compensation” the personal use value of motor vehicles provided to them during their employment by their employers. Three of these actions are here for judicial review under G.L.c. 30A, § 14, after the Contributory Retirement Appeal Board (CRAB) affirmed the local retirement boards’ decisions, which in most respects contradicted advisory opinions issued by the Public Employee Retirement Administration Commission (PERAC). The remaining plaintiffs were unable to pursue administrative appeals under G.L.c. 32, §16,[4] has CRAB bas frozen the administrative appeal process pending judicial resolution of what the parties view as solely a legal question.[5] In each case, PERAC has intervened as a parly plaintiff and CRAB has intervened as a party defendant. The plaintiffs have moved for judgment on the pleadings, and in some cases the local retirement boards and CRAB have filed cross motions for judgment on the pleadings.
BACKGROUND
PERAC approves local retirement board determinations, supervises their accounting and record-keeping practices, and is charged by statute with “over-all responsibility to administer the public employee retirement system.” Boston Retirement Board v. Contributory Retirement Appeal Board, 441 Mass. 78, 80 n.5 (2004). Between January 5, 2001, and October 18, 2002, PERAC issued four memoranda addressing whether or not a retiree’s personal use value of an employer-supplied motor vehicle could be counted as regular compensation. In its first memorandum, PERAC opined that the value of the personal use of an employer-supplied vehicle constitutes regular compensation if the value is added to an employee’s W-2 form in accordance with Internal Revenue Service *518 (IRS) rules.[6] The memorandum also stated that the personal use value of vehicles exempt from being reported on W-2 forms, such as unmarked police vehicles, were not to be considered as regular compensation.
On April 18, 2001, PERAC issued a second memorandum allowing prospectively only — for those who retired on or after April 18, 2001 — the personal use value of an exempt vehicle to count as regular compensation in two circumstances. First, if the member of the retirement system supplies written documentation to the local retirement board that he or she had commuting and/or additional use of an exempt employer-supplied vehicle, the member will receive regular compensation in the amount of $ 1.50 per one-way commute for 249 days per year unless he or she can prove additional use of the vehicle. Second, where the member supplies written documentation to the local board that he or she was entitled to unlimited personal use of an exempt employer-supplied vehicle, the personal use value counts as regular compensation in the amount of the annual lease value allowed by the IRS if the member proves the vehicle’s fair market value. The memorandum further advises that the members must pay retirement deductions on the additional regular compensation claimed before receiving the personal use value of the vehicle as regular compensation.
On October 17, 2001, PERAC stated in its third memorandum that
An unmarked law enforcement vehicle could also be considered to be tax exempt, and thus no W-2 would be issued, if the governmental unit that owns or leases the vehicle has authorized its use by a law enforcement officer incident to his or her law enforcement functions. The regulation (§1.274.5T(k)(6)] specifically provides that the use of an unmarked vehicle for vacation or recreation trips cannot be an authorized use.
The regular compensation of any member who is authorized to use an employer-owned or leased motor vehicle for personal use shall include the value of that personal use. For members who receive a W-2 form in connection with personal use, the amount of regular compensation will be the amount reflected in the W-2 issued by the employer. If the motor vehicle is used only for commuting, the value will likely be $1.50 each way for 249 days per year. If the employee is allowed personal use in addition to use for commuting, the value Will have been added to the W-2 issued by the employer
Members who do not receive a W-2 form in connection with personal use of an employer-owned or leased motor vehicle will most often be a police officer or firefighter. The member must provide evidence that he or she is authorized to use the employer-owned or leased motor vehicle for personal purposes and the extent to which such personal use is authorized. As with the personal use described above, the value of the use of the motor vehicle for commuting will be $1.50 each way for 249 days per year. In addition, the member must establish the annual leased value of the vehicle and the percentage of the total use that was for personal purposes.
On October 18, 2002, PERAC issued a fourth memorandum, based upon the opinion of its tax counsel, instructing local retirement boards that the IRS Code bars retired members from paying retirement contributions, and therefore that retirement boards must cease collecting such payments and refund contributions made after members’ retirement as a result of the personal use of an employer-supplied motor vehicle. PERAC further advised local retirement boards to grant the appropriate amount of regular compensation for that use despite the lack of retirement contributions.
In reliance upon PERAC’s memoranda, the plaintiffs unsuccessfully asked their local retirement boards to calculate in their retirement benefits the added personal use value of employer-supplied motor vehicles which they had as police or fire chiefs. This issue was adjudicated by CRAB in three cases, Raymond Sorensen (Sorensen), Richard Shafer (Shafer), and James Dufort (Dufort), and has reached this Court on appeal directly from the local retirement boards’ decisions in the cases of Joseph Donlon (Donlon) and Richard Spencer (Spencer).
1. Sorensen
Sorensen retired from the position of fire chief of the Towm of Stoneham on September 1, 1986. As fire chief for approximately 19 years, Sorensen had the authorized personal use of an employee-supplied motor vehicle. It was not until May 22, 2002, that Sorensen requested the Stoneham Retirement Board to consider the value of his authorized personal use of the employer-supplied vehicle as regular compensation and to recalculate his retirement benefit accordingly, retroactive to his date of retirement. Sorensen’s request states that he had prepared, and would submit to the Stoneham Retirement Board upon request, documentation of the fair market and lease values of the vehicle he used while he was fire chief, am affidavit indicating that he had authorized personal use of the vehicle, data showing the year and make of vehicle, depreciation, personal use, months of use and the appropriate payback to the retirement system. The Stoneham Retirement Board responded, in reliance upon PERAC’s memorandum dated April 18, 2001, that the personal use value of an employer-supplied vehicle as regular compensation was only available to members retiring on or after April 18, 2001, and was not available to Sorensen, who had retired approximately 15 years earlier.
*519 Sorensen appealed to CRAB, the agency charged with responsibility for the orderly administration of retirement adjudications and with enforcing uniform application of the retirement laws. See Kozloski v. Contributory Retirement Appeal Board, 61 Mass.App.Ct. 783, 789 (2004). CRAB assigned the matter to an administrative magistrate of the Division of Administrative Law Appeals (DALA) for a hearing. On July 16, 2002, Sorensen agreed to waive a hearing before DALA and to submit his case upon written submissions, which included copies of his proposed exhibits.[7] Without addressing the retroactivity basis relied upon by the Stoneham Retirement Board, on November 7, 2002, the DALA administrative magistrate ruled that Sorensen’s personal use value of the employer-supplied vehicle did not constitute regular compensation within the meaning of G.L.c. 32, §1. The DALA administrative magistrate based her conclusion on four sources of law. First, she quoted G.L.c. 32, §1, which defines “regular Compensation” in pertinent part as
salary, wages or other compensation in whatever form lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement. . .
The administrative magistrate next quoted the definition of “service” set forth in G.L.c. 32, §1: “service as an employee in any governmental unit for which regular compensation is paid.” She then noted that 840 Code Mass. Regs. §15.03(2)(a) excludes from the definition of regular compensation “amounts paid for hours worked beyond the member’s normal work schedule.” Finally, the administrative magistrate cited Boston Association of School Administrators and Supervisors v. Boston Retirement Board, 383 Mass. 336, 341 (1981), for the proposition that “regular compensation” refers to “remuneration geared to work or services performed.” The administrative magistrate reasoned that
By its very nature, personal use value of an employer-supplied motor vehicle is not for the service of the employee [for the employer]; the employee cannot be performing any work or service as an employee while using a motor vehicle for personal use.
Sorensen sought further review from CRAB. PERAC intervened, and on September 30, 2003, CRAB affirmed the decision of the DALA administrative magistrate after repeating her reasons without undertaking further analysis. Sorensen brought this action, and he and the Stoneham Retirement Board have filed cross-motions for judgment on the pleadings.
2. Shafer
Shafer was the City of Lawrence fire chief from an unspecified date until his retirement on December 31, 2002. As fire chief, Shafer had authorized unlimited use of his employer-supplied motor vehicle. Prior to his retirement, in February of 2002, Shafer asked the Lawrence Retirement Board whether the personal use value of the employer-issued motor vehicle he used as fire chief could be counted as regular compensation for purposes of calculating his pension. Shafer offered to make the appropriate employee contributions.
On February 26, 2002, the Lawrence Retirement Board voted to deny Shafer’s request, and it notified him of this by letter dated March 5, 2002. In the letter, the board stated that “only salary and/or wages which are identified on an employee’s W-2 form and defined in M.G.L.c. 32, §1 and 840 CMR 15.00 will be considered regular compensation.” On March 21, 2002, Shafer timely appealed from the decision of the Lawrence Retirement Board to CRAB, which assigned the matter to DALA for a hearing. Pursuant to the provisions of 801 Code Mass. Regs. §1.01(10)(c), Shafer and the Lawrence Retirement Board agreed to submit the case on written submissions and waive a hearing before DALA.
On June 27, 2003, the DALA administrative magistrate issued a decision affirming the Lawrence Retirement Board’s decision and repeating the reasons set forth in her decision in Sorensen (see above). Shafer sought further review from CRAB, PERAC intervened. On September 30, 2003, CRAB issued its decision affirming the Lawrence Retirement Board’s decision, upon adopting the DALA magistrate’s findings of fact and agreeing with her reasoning without further analysis. Shafer sought judicial review of CRAB’s decision pursuant to G.L.c. 30A, §14, and he and the Lawrence Retirement Board have filed cross motions for judgment on the pleadings. CRAB requests that final judgment enter affirming its decision.
3. Dufort
Dufort was appointed chief of the Gardner Police Department in November of 1998, and held that position until his retirement on December 28, 2001. From November of 1998 through January 2, 2000, the mayor, Charles Manca (Manca), authorized Dufort’s personal use of a town-owned, unmarked police vehicle. On January 3,2000, Daniel Kelley (Kelley) became Gardner’s mayor. Kelley denies ever expressly authorizing Dufort’s personal use of the employer-supplied vehicle.
In June or July of 2001, Dufort and Gardner’s fire chief met with Kelley to discuss the issue of retirement compensation related to their employer-issued vehicles. In response to Dufort’s questions, Kelley said that he “did not have a problem” with Dufort having deductions from his pay for the use of the vehicle, or with Dufort’s personal use of the vehicle as long as he did not drive it to a bar. Kelley further told Dufort that he understood that this was a deal arranged by the previous mayor.
*520 In November of 2001, in anticipation of his retirement, Dufort asked the Gardner Retirement Board to consider the personal use value of the vehicle as regular compensation and to calculate his retirement benefits accordingly. On February 5, 2002, Kelley wrote to the Gardner Retirement Board that “at no time during my term in office did I enter into any verbal or written agreement with either the Fire or Police Chief that I would grant them personal use of their municipally owned vehicle that is assigned to them.”
On March 14, 2002, the Gardner Retirement Board approved of Dufort’s request only for the first year of his tenure as police chief when Manca had expressly authorized Dufort’s personal use of the unmarked police vehicle. At some unspecified point, Dufort sent the Gardner Retirement Board a check to pay for three years of personal use value of the vehicle, but the board returned the check, stating it would allow only one year’s worth of personal use credit.
On March 24, 2002, Dufort appealed the Gardner Retirement Board’s decision to CRAB, which assigned the matter to DALA for a hearing. The DALA administrative magistrate conducted a hearing on.August 7, 2003. On August 20, 2003, the DALA administrative magistrate issued a decision concluding that both Manca and Kelley had authorized Dufort’s personal use of the employer-supplied vehicle, but also ruling, as in the Sorensen matter, that the personal use value of an employer-supplied vehicle does not qualify as “regular compensation” under G.L.c. 32, §1. Dufort appealed from the DALA decision to CRAB, which on March 31, 2004, issued its decision incorporating by reference the DALA administrative magistrate’s factual findings and affirming the decision on other grounds. Specifically, CRAB relied upon G.L.c. 32, §22(i)(c), which directs payroll disbursing officers to determine the amount of regular compensation and regular deductions
of any member in service who is receiving a non-cash maintenance allowance in the form of full or partial boarding and housing . . . The regular compensation of any such member for any period, for purposes of computing retirement allowances, shall include not only the amount of the cash payment for his regular services but also the amount of any non-cash maintenance allowance at the rate in effect for him for such period under the provisions of this paragraph [to be determined by the state, county or municipal personnel administrators, depending on the employer] . . .
In its decision, CRAB reasoned that the Legislature’s inclusion in §22(l)(c) of only one form of non-cash maintenance allowance supports the inference that the Legislature did not intend to include as regular compensation any other form of non-cash compensation.
Dufort filed this action seeking judicial review of CRAB’s ruling. Before the Court are cross-motions for judgment on the pleadings by Dufort and the Gardner Retirement Board.
4. Donlon
The following facts are taken from Donlon’s verified complaint and accepted as true by CRAB only for purposes of the Court’s consideration of Donlon’s and CRAB’s cross-motions for judgment on the pleadings. Donlon was chief of police of the City of Peabody from August 28, 1985, until his retirement on April 15, 1988. As police chief, Donlon had authorized personal use of an unmarked employer-supplied vehicle and was considered to be on duty 24 hours a day.
Upon his retirement, Donlon began receiving a monthly pension as calculated by the Peabody Contributory Retirement Board and approved by PERAC. That pension calculation did not take into account Donlon’s personal use of the city’s vehicle. In January of 2002, Donjon asked the Peabody Contributory Retirement Board to include in its calculation of the plaintiffs pension the personal use value of the employer-supplied vehicle which Donlon had as police chief. The Peabody Contributory Retirement Board refused Donlon’s request unless he provided “additional documented mileage information regarding [Donlon’s] authorized and actual personal use of the vehicle.”
Donlon appealed to CRAB from the decision of the Peabody Contributory Retirement Board, but that appeal has been halted pending resolution of the legal issue before this Court. Donlon filed this action seeking a declaration that the personal use value of his employer-supplied vehicle should be counted toward his regular compensation as police chief. Donlon’s and CRAB’s cross-motions for judgment on the pleadings solely address whether, as a matter of law, the value of Donlon’s personal use of the employer issued vehicle qualifies as regular compensation.
5. Spencer
Spencer’s complaint contains the following allegations of fact which the defendants, the Essex Regional Retirement Board and CRAB, do not challenge for purposes of the Court’s disposition of Spencer’s and CRAB’s cross-motions for judgment on the pleadings. Spencer had been the police chief of the Town of Georgetown from an unspecified date until July 1, 2002. In that capacity, Spencer had authorized personal use of an employer-supplied motor vehicle. Upon his retirement on July 1, 2002, Spencer began receiving a monthly pension allowance as calculated by the Essex Regional Retirement Board and approved by PERAC representing a total annual amount of $69,549.84, and which involved as regular compensation the personal use value of the employer-supplied motor vehicle. Prior to his retirement, the plaintiff requested and the Essex Regional Retirement Board issued Spencer a sheet calculating his monthly retirement allowance. In reliance upon that sheet, Spencer decided to retire on July 1, 2002, at the age of 58, even *521 though he could have opted to work as police chief for at least another six years.
Subsequently, the Essex Regional Retirement Board informed Spencer that as of July 1, 2003, and based upon the decision of the DALA administrative magistrate in Sorensen, it would suspend the portion of Spencer’s monthly retirement allowance that was based upon the personal use value of the employer-supplied motor vehicle unless CRAB reversed that decision, which it did not do. As with Donlon, CRAB has declined to review the DALA administrative magistrate’s decision until the Court resolves what the parties view as a purely legal issue.
DISCUSSION 1. Standard of Review
In interpreting and applying the retirement laws, the Court must give “due weight to the experience, technical competence, and specialized knowledge” as well as the discretionary authority and adjudicatory decisions of administrative agencies. Kozloski v. Contributory Retirement Appeal Board, 61 Mass.App.Ct. at 786. “In the notoriously difficult, sometimes tortuous, field of retirement rights and calculations, there is particular reason for giving deference to the agency’s expertness.” Id., Quoting Evans v. Contributory Retirement Appeal Board, 46 Mass.App.Ct. 229, 233 (1999). “Where an agency’s interpretation of a statute is reasonable, the court should not supplant it with its own judgment.” Boston Retirement Board v. Contributory Retirement Appeal Board, 441 Mass. at 82 (PERAC’s interpretation of “earned income” was reasonable interpretation of the statute).
In this case, the two administrative agencies with expertise in retirement issues disagree as to whether the'value of the plaintiffs’ personal use of their employer-supplied motor vehicles can be counted as regular compensation. While both CRAB and PERAC claim entitlement to deference, the Court must determine if either agency has reasonably interpreted G.L.c. 32 and the regulations delineating “regular compensation.” Moreover, regardless of the “narrow and highly deferential standard” of review to be accorded to CRAB’s adjudications in Sorensen, Dufort, and Shafer, see Sugrue v. Contributory Retirement Appeal Board, 45 Mass.App.Ct. 1, 5 n.5 (1998), G.L.c. 30A, §14 calls for setting aside CRAB’s decisions if they were based upon an error of law or unsupported by substantial evidence. See, e.g., Retirement Board of Brookline v. Contributory Retirement Appeal Board, 33 Mass.App.Ct. 478, 480 (1992); Cataldo Contributory Retirement Appeal Board, 343 Mass. 312, 314 (1961).
2. Regular Compensation
Public employees’ pensions are based in part upon their average annual rate of regular compensation over three years when the compensation was highest. See G.L.c. 32, §5(2)(a). This statutory formula is intended to reflect “recurrent or repeated amounts of compensation not inflated by extraordinary ad hoc payments.” See Boston Association of School Administrators and Supervisors v. Boston Retirement Board, 383 Mass. at 341. The Supreme Judicial Court has described “regular compensation” as “remuneration geared to work or services performed; moreover, ‘regular,’ as it modifies ‘compensation,’ imports the idea of ordinariness or normality as well as the idea of recurrence.” Id.
The primary source of legislative intent regarding the scope of “regular compensation” is the plain language of the statute. Boston Retirement Board v. Contributory Retirement Appeal Board, 441 Mass. at 81. As discussed above, G.L.c. 32, §1, defines “regular compensation” as
salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement. . .
Among the statute’s implementing regulations,[8] 840 Code Mass. Regs. § 15.03( 1) provides that the term “regular compensation” shall include:
(a) The member’s annual rate of compensation as provided in an approved salary schedule;
(b) Any non-cash maintenance allowances in the form of full or partial boarding and housing, as provided in M.G.L.c. 32, §22(l)(c);
(c) Any part of such salary, wages, or other compensation derived from federal grants . . .
(d) Any premiums paid by any governmental unit for the purchase of an individual or group annuity contract. . .
(e) Any amounts paid as educational incentives;
(f) Any amounts paid for length of service;
(g) Any amounts paid as premiums for shift differentials; and
(h) Any amounts paid as cost-of-living bonuses or cost-of-living pay adjustments."
Both G.L.c. 32, §1, and 840 Code Mass. Regs. §15.03(2) list what does not count as regular compensation:
(a) Any amounts paid for hours worked beyond the member’s normal work schedule;
(b) Any amounts paid as premiums for working holidays, except as authorized by law;
(c) Any amounts paid as bonuses other than cost-of-living bonuses;
(d) Any amounts paid in lieu of or for unused vacation, sick leave, or severance pay;
(e) Any amounts paid as early retirement incentives; and
*522 (f) Any other payments made as a result of the member giving notice of retirement.
840 Code Mass. Regs. §15.03(2).
Neither the statute nor the regulations explicitly include or exclude from their definitions of “regular compensation” the personal use value of an employer-supplied motor vehicle. The statutory definition of “regular compensation” does not limit compensation to monetary payments, but provides that it can be in any form as long as it comports with the other requirements of Section 1. G.L.c. 32, §1. The descriptions of what is and is not “regular compensation” in 840 Code Mass. Regs. §15.03(1) and (2) do not shed much light on the subject. The list of forms of regular compensation does not purport to be exhaustive.
The reasons advanced by CRAB and PERAC for its diverse interpretations of G.L.c. 32, §1, are unavailing. While both frame the issue as solely one of statutory interpretation as to whether the personal use value of an employer-supplied motor vehicle is regular compensation under the statute, their countervailing positions rest on factual assumptions wholly unsupported by the record. PERAC maintains that the personal use value of an employer-supplied motor vehicle constitutes compensation for the employee’s service because without that use, the employee would have demanded additional cash compensation. According to PERAC, this arrangement enabled employers to recruit and retain employees without increasing salaries, and employees employed the use of vehicles without the attendant costs. There is.simply nothing in the records before me which supports these bare factual assertions or otherwise establishes that in general, public employers determined that the personal use value of these motor vehicles would be part of the plaintiffs’ regular compensation.
CRAB’s conclusions are also untenable on this undeveloped record to the extent that they rest upon the DALA administrative magistrate’s view that, “By its very nature, personal use value of an employer-supplied motor vehicle is not for the service of the employee [to the employer]; the employee cannot be performing any work or service as an employee while using a motor vehicle for personal use.” This truncated reasoning is problematic in several ways. First, it ignores the Legislature’s intent as unambiguously expressed in G.L.c. 32, §1, that “regular compensation” is determined for the individual service of the employee for the employer by the employing authority, and that the municipal employers are free to decide both the amount and the forms of regular compensation for its police and fire chiefs, as long as that compensation is within the bounds of G.L.c. 32.
Moreover, CRAB’s position ignores the reality that in some circumstances, an employee’s personal use of an employer-supplied vehicle may be geared toward performing services for the employer. Because certain emergency response positions cannot typically be condensed into a normal work schedule, some public employers require particular employees to be “on call” as a regular part of their job. One obvious reason for authorizing these employees the personal use of employer-supplied motor vehicles is to enable them to respond more rapidly to emergencies in the event that their own cars are immediately unavailable. See Bower v. Contributory Retirement Appeal Board, 393 Mass. 427, 429 (1984) (night differential pay received by employee who regularly worked nighttime shift was “regular compensation,” in contrast to bonus and overtime payments).
Equally flawed is CRAB’s reasoning set forth in Dufort and repeated here that G.L.c. 32, §22(l)(c), shows that “regular compensation” is limited to cash payments with the single exception of boarding and housing benefits. CRAB relies upon the maxim of statutory interpretation that the Legislature’s specification of one exception “strengthens the inference that no other exception was intended.” See e.g., Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 619-20 (1997) (statute provides that insurer cannot contest life insurance policies except for three specific reasons); LaBranche v. A.J. Lane & Co., Inc., 404 Mass. 725, 729 (1989) (statute which by its terms applies to “the final passage of any measure, except a revenue loan order . . .” contained one express exception and thus strengthened inference that Legislature intended no other exception). In contrast to the statutes at issue in these cases cited by CRAB, G.L.c. 32, §22(l)(c) does not explicitly label non-cash maintenance allowances in the form of boarding and housing as exceptions to the rule. Rather than indicating that boarding and housing allowances are the only non-cash forms of regular compensation, G.L.c. 32, §22(l)(c), simply instructs disbursing officers how to determine regular compensation and regular deductions in cases where housing and boarding allowances are given; nowhere does the statute exclude other non-cash forms of regular compensation.[9]
Had the Legislature intended to limit non-cash forms of “regular compensation” to housing and boarding benefits, it could and would have done so expressly, either in G.L.c. 32, §1 and/or in §22(1) (c). Compare G.L.c. 152, §1 (Legislature in drafting the workers’ compensation statute excluded from the definition of “average weekly wages” “health insurance plans, pensions, day care, or education and training programs provided by employers . . .”). Accordingly, I decline to read into G.L.c. 32 a far more narrow definition of “regular compensation” which the Legislature did not articulate and which is inconsistent with the expansive definition of that term as set forth by the Legislature in Section 1.1 therefore conclude that G.L.c. 32, §1, does not by its terms generally exclude from “regular compensation” the personal use value of an employer-supplied motor vehicle.
*523 That does not end the inquiry, but merely compels further examination into whether or not the employing municipalities of these plaintiffs determined that the personal use value of the employer-supplied motor vehicles constituted part of the plaintiffs’ regular compensation such that it was geared to services performed for the employer and that it was a regular, ordinary and recurrent aspect of the employment. See G.L.c. 32, §1; Boston Association of School Administrators and Supervisors v. Boston Retirement Board, 383 Mass. at 341. In deciding this issue, administrative agencies and reviewing courts should consider evidence bearing on the following factors:
(1) whether the employers authorized the plaintiffs to use the employer-supplied motor vehicles for their personal use, and if so, the source and scope of that authorization (i.e., for what periods of employment, whether it was for vacations or recreational trips,[10] commuting, and/or professional development events, and whether it was temporary, extraordinary, or a regular aspect of the employment);
(2) the expressed purpose for such authorization (i.e., was it designed to facilitate emergency responses, in lieu of a higher salary, or as a job perk linked to the prestige of the position);
(3) the plaintiffs’job descriptions and requirements, particularly whether they involved a normal work schedule or required the plaintiffs to be on call and, if so, the extent of being on call and whether being on call was temporary, extraordinary, or a regular aspect of the employment; and
(4) whether there is evidence that the public employers authorizing the personal use of the motor vehicles determined that this personal use value was part of the plaintiffs’ regular compensation. The plaintiffs may satisfy this factor by reference to the employment contract, or by documenting that deductions were made from the plaintiffs payroll for retirement contributions reflecting the personal use value, or by evidence that such value was reported in the plaintiffs’ W-2 form.[11]
Where, upon consideration of the reliable evidence relating to these factors, local retirement boards conclude that a plaintiffs personal use value of an employer-supplied vehicle constituted regular compensation such that it was geared to services performed for the employer and that it was a regular, ordinary and recurrent aspect of the employment, the plaintiffs must present additional detailed documentation of the following:
(1)the extent to which the plaintiff used the employer-supplied vehicle for authorized personal reasons (i.e., not for vacations or recreational trips, but for commuting, in order to be available to respond to emergencies, or for other services geared to the plaintiffs employment);
(2) proof of the vehicle’s fair market value; and
(3) documentation of the annual lease value allowed by the IRS for the relevant periods and vehicles.
By treating the personal use value of these vehicles as regular compensation only where such use is authorized to serve the employer due to the nature of the job as outlined in the two sets of factors set forth above, the state retirement system will not incur the massive, unanticipated burdens as feared by the defendants. Nor does this ruling open the floodgates to include in the definition of regular compensation other fypes of benefits, such as health insurance, as they cannot reasonably be viewed as being geared to services performed.
The facts found by CRAB in Sorensen, Shafer, and Dufort that the plaintiffs had, at any or all relevant times, authorized personal use of employer supplied vehicles are insufficient to determine whether or not the personal use value of the vehicles constituted regular compensation. Therefore, CRAB’s rulings must be vacated, as they are not supported by substantial evidence and are based upon an error of law, and the cases must be remanded for further proceedings consistent with this Court’s interpretation of the relevant statutes and the legal principles articulated herein, including the factors to be considered when applying the statutory definitions and legal principles. With respect to Donlon and Spencer, the facts not disputed by the parties for purposes of the instant motions are insufficient for a determination as to whether or not the personal use value to those plaintiffs of the employer-supplied vehicles amounted to regular compensation. Consequently, no party moving for judgment on the pleadings prevails,[12] and Donlon and Spencer must be remanded back to the local retirement boards for consideration of any additional facts which the plaintiffs can present to support their claims.
3. Retroactivity
The Stoneham Retirement Board denied Sorensen’s request to treat the personal use value of the employer-supplied vehicle as regular compensation based upon what it viewed as the non-retroactivity of PERAC’s April 12, 2001, advisoiy memorandum. Because this issue may arise again, the Court addresses it briefly.
Since 1945, the definition of regular compensation in G.L.c. 32, §1, has included “salary, wages, or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority.” See St. 1945, c. 658, §1. Moreover, “(t]he right to receive a retroactive wage increase vests when the work is performed, not when the increase is ratified.” Case of Gunderson, 423 Mass. 642, 645 (1996) (computation of employee’s average weekly wage should be based upon new labor agreement which contained retroactivity provision). It follows that *524 where a retired public employee can show that his or her personal use of an employer-supplied motor vehicle constituted “regular compensation” under the standard set forth above, that employee is entitled to receive retirement benefits accordingly, as long as he retired after the effective date of St. 1945, c. 658, §1.
ORDER
For the foregoing reasons, it is hereby ORDERED that
1). In Shafer v. Contributory Retirement Appeal Board, Essex Civil Action Number 2003-2016, Shafer’s and the Lawrence Retirement Board’s cross motions for judgment on the pleadings are DENIED, and the matter is remanded to CRAB for further proceedings consistent with this decision.
2). In Sorensen v. Stoneham Retirement Board, Middlesex Civil Action Number 2003-04298, Sorensen’s and the Stoneham Retirement Board’s cross-motions for judgment on the pleadings are DENIED, and the matter is remanded to CRAB for further proceedings consistent with this decision.
3). In Dufort v. Gardner Retirement Board, Worcester Civil Action Number 2004-0684C, Dufort’s motion for judgment on the pleadings is DENIED, and the matter is remanded to CRAB for further proceedings consistent with this decision.
In Donlon v. Peabody Contributory Retirement Board, Essex Civil Action Number 2003-1252, Donlon’s and CRAB’s cross motions for judgment on the pleadings are DENIED, and the matter is remanded to the Peabody Contributory Retirement Board for further proceedings consistent with this decision.
5). In Spencer v. Essex Regional Retirement Board, Essex Civil Action Number 2003-1254A, Spencer’s and CRAB’s cross motions for judgment on the pleadings are DENIED, and the matter is remanded to the Essex Regional Retirement Board for further proceedings consistent with this decision.
The Court will retain jurisdiction to reopen the case in the event further proceedings are appropriate.

 General Laws c. 32, §16(4) permits any person aggrieved by an action taken by a local retirement board to appeal to CRAB.

 See Sullivan v. Town of Brookline, 435 Mass. 353, 355 n. 1 (2001) (exhaustion of administrative remedies is not required where no administrative remedy exists).

 According to the memorandum unmarked police vehicles are exempt from federal taxation when fulfilling a law enforcement responsibility of a law enforcement officer, such that the officer is employed full-time by a law enforcement agency, is authorized to carry a gun, execute warrants, and make arrests, and ordinarily carries a firearm. Additionally, the memorandum states that the personal use value of clearly marked fire and police vehicles is not subject to taxation if the employee is required to commute in the vehicle so that he/she can be on call outside his/her regular shift.

 There is no merit to Sorensen’s claim that the lack of a hearing was a procedural defect, where the administrative record establishes that he requested to waive the hearing as permitted by 801 Code Mass. Regs. §1.01(10)(c) (“Any Party may elect to waive a hearing and submit his case upon written submissions”). That Sorensen was acting pro se at the time does not alter this conclusion. See Jackson v. Commonwealth, 430 Mass. 260, 264 (1999) (pro se litigants are held to the same standard as practicing attorneys).

 PERAC promulgated 840 Code Mass. Regs §1.01 et seq. pursuant to G.L.c. 32, §21(4).

 General Laws c. 32, §22(l)(c), only governs the determination of regular compensation and deductions of an employee who “is receiving a non-cash maintenance allowance in the form of full or partial boarding and housing.” See G.L.c. 32, §22(1) (c). Because it is silent about other non-cash forms of regular compensation, CRAB has not shown that interpreting “regular compensation” to include the personal use value of employer-supplied vehicles would produce what it calls absurd results.

 PERAC’s memorandum dated October 17, 2001, in reliance upon a federal tax code provision, advises that “the use of an unmarked vehicle for vacation or recreation trips cannot be an authorized use” and therefore does not count as regular compensation. This reasoning is consistent with the principles in G.L.c. 32, §1, and authoritative case law that regular compensation must be authorized by the employer and must be geared to services performed. For example, the personal use value of the vehicle would not count as regular compensation if a fire or police chief, even if generally expected to be on call 24 hours a day, used the employer — supplied vehicle to take a vacation or recreational trip in circumstances which would not permit him to respond to emergencies (i.e., to a distant location or a location at which he could not be contacted in an emergency), or if he temporarily relieved himself of being “on call” as necessary for vacations or family emergencies and designated another person to assume his duties. In these circumstances, the employee’s personal use of the employer-supplied vehicle could not be viewed as serving the employer and therefore could not qualify as regular compensation.

CRAB correctly acknowledges that the failure to report the personal use value of an employer-supplied vehicle as income on one’s W-2 forms is not necessarily dispositive of the issue here, as federal tax laws do not dictate this Court’s application of G.L.c. 32. Nonetheless, plaintiffs claiming that such value is exempt from being reported on a W-2 form should support their claims with references to binding legal authorities rather than PERAC advisory memoranda. Of course, evidence that the personal use value of an employer-supplied motor vehicle was reported on a W-2 form would support a finding that the public employer viewed that value as regular compensation.

 With respeet to Donlon, the Court notes that the Peabody Contributory Retirement Board properly refused Donlon’s request to include in his retirement pension calculation the personal use value of his employer-supplied vehicle unless Donlon provided additional information. However, that retirement board has not moved for judgment on the pleadings, and CRAB’s motion for judgment on the pleadings is based on the legal question discussed above rather than the decision of the Peabody Contributory Retirement Board.